[Civil No. 4412. Filed June 1, 1942.]

[126 Pac. (2d) 313.]

EDWARD V. MURPHY, Appellant, v. P. A. YEAST, Appellee.

Mr. J. H. Smith and Mr. Charles P. Elmer, for Appellant.

Mr. E. Elmo Bollinger, for Appellee.

LOCKWOOD, C. J.—P. A. Yeast, plaintiff, brought suit against J. P. Murphy and Edward V. Murphy to cancel a certain contract entered into between plaintiff and Edward V. Murphy, defendant. The case was tried to the court without a jury, and judgment rendered in favor of plaintiff to the effect that defendant had forfeited any rights under the contract upon which the suit was based, and canceling the contract. Motion for new trial was made and the court set aside the judgment rendered, and briefs were submitted on certain legal questions. Thereafter the court, upon a full reconsideration, reaffirmed its previous decision and entered judgment accordingly, whereupon this appeal was taken.

The facts, taken in favor of the judgment as strongly as are reasonably supported by the evidence, may be stated as follows: On September 1, 1938, plaintiff was the owner of a cattle ranch and outfit in Mohave county, known and referred to as the Spear ranch, including lands held in fee simple, under lease or grazing permit, cattle and horses, and other personal property. Plaintiff also claimed to be the owner of a water right, known as the Patterson well, appurtenant to his cattle outfit. The whole outfit was subject to a purchase money mortgage owned by one L. B. Thorne, which was then being litigated between plaintiff and Thorne, and plaintiff had also entered into a contract with the Malco Mining Company to supply it with water for its mining purposes from the Patterson well, at a fixed price. All of this situation was well known to both defendant and J. P. Murphy. After some pre-

liminary negotiations between plaintiff and J. P. Murphy, the father of defendant Edward V. Murphy, a contract was entered into between plaintiff and defendant. After setting up the ownership by plaintiff of the cattle outfit, and giving a full description of both the real and personal property included in the outfit, the contract continued:

"Whereas, vendor has agreed to sell an undivided one-half ($\frac{1}{2}$) interest in and to the above described property to purchaser, and said purchaser has agreed to purchase the same, . . . "

The consideration was given as $14,000, payable in installments, $2,722.50 at the execution of the contract, $500 on or before November 6, 1938, which time might be extended to May 6, 1939, and the balance at various times succeeding. The Thorne mortgage was then described and the fact that it was in litigation, and it was provided:

" . . . that said P. A. Yeast shall satisfy said mortgage, all at his own cost and expense, and without any expense whatsoever to purchaser; that, in such foreclosure proceedings, the Court has made and entered an order appointing J. Leonard Neal Receiver of said above described property, and, that, if such Receiver should qualify as such, any possession agreed to be given to the purchaser of the above described property shall be subject to the order of appointment of said Receiver."

There were other provisions for keeping accurate accounts of the business, and it was then agreed:

" . . . That purchaser shall receive one-half ($\frac{1}{2}$) of the proceeds derived from said ranch and property after the deduction of operating expenses as hereinbefore provided. But, however, the proceeds to which purchaser is entitled shall apply on the above stated purchase price until such purchase price shall have been paid in full.

## "V.

"But, if default be made in the payment of said installments of said purchase price at the times and in the amount and manner as hereinbefore provided, or any part thereof, or in the payment of any interest at the time and place when due; or if default be made by said purchaser in any of the terms and conditions of this agreement on the part of the purchaser to be paid, kept and performed, then and in such event, at the election of said vendor, this agreement shall be and become null and void, and all rights of the said purchaser herein shall immediately cease and terminate, and any payments previously made on account of said purchase price shall be and remain the property of said vendor, as rental and liquidated damages, and said vendor shall be released from any obligations to convey said interest in said property or any part thereof.

"  . . .

## "VI.

"It is further understood and agreed that certain contracts are in existence affecting the rights and obligations of the vendors with reference to said cattle ranch and property. Vendor agrees that the purchaser shall have, and he is hereby given, the benefits of an undivided one-half ($\frac{1}{2}$) interest in such contracts and said purchaser hereby accepts one-half ($\frac{1}{2}$) of the obligations thereof. . . . "

Defendant entered into possession as manager of the property immediately upon the execution of the contract and continued in charge thereof until this action was brought in August of 1939, seeking to declare the contract forfeited for failure to pay the $500 installment due on May 6, 1939, as above. The action was resisted, the gist of the defense being that while no specific payment of the $500 had been made by defendant from his own funds, he was entitled to credit for a sufficient amount from various cattle sold by him as manager of the outfit, under the provisions of the contract, to more than pay the $500.

The principal witness was Dixon Fagerberg, a regularly licensed certified public accountant. His testimony was voluminous and technical, but summed up it amounted to a statement that while many sales of the property involved had been made after September 1, 1938, which had been credited to plaintiff after paying the operating expenses of the ranch, so that he had received therefrom more than the $500 due under the contract, yet this money came from capital and not from profit on the operation of the outfit. And the court avowedly based its judgment on the theory that in considering the amount of credit due defendant on the operation of the ranch, it must consider capital depreciation and inventory losses. In its opinion it very correctly and succinctly summed up the law as follows:

" . . . It is apparent from the reading of the contract that this was a business deal and not a gift of property. The defendant was to become the active manager of the property and operate it to the end that a profit would be produced, and if such management and operation produced a profit, then he was to have the fruit of his labors applied to the purchase price of his interest in the property. Certainly it was not intended between the parties that the defendant could take possession of the property, and as manager of the ranch sell its assets and thereby acquire an absolute interest in the remainder."

There are ten assignments of error. The first and second refer to preliminary matters regarding the granting of an interlocutory injunction and the denial of the appointment of a receiver. We think, in view of our conclusion on the main issue of the case, they need not be discussed nor determined.

The third, fourth, fifth and sixth assignments go to the admission of evidence. We have repeatedly held that if there is sufficient legal and competent evidence in the record to sustain the findings and judg-

ment, when the case is heard before the court, without a jury, it will not be reversed on account of the erroneous admission of evidence unless it affirmatively appears that the erroneous evidence affected the judgment of the court. There is ample evidence to sustain the judgment of the trial court, without consideration of any evidence which might have been erroneously admitted.

The seventh assignment is that the court refused to permit defendant to show where he could have increased the income from the ranch had he been permitted to do so by plaintiff. This apparently refers to the testimony of defendant that he had an opportunity to pasture twelve hundred head of cattle in July, 1939, at fifty to sixty cents per month per head, which was blocked by plaintiff. The pleadings of defendant do not raise the issue that he was prevented by the action of plaintiff from realizing profits on the operation of the ranch. They are apparently based upon the one defense, that the operation of the ranch as it was actually carried on produced enough to make the payment of $500 required to be made by May 6, 1939, and not that they would have produced it if it had not been for the improper actions of plaintiff. Nor was there a request made to amend the pleadings to permit this additional defense. We think, on the record as it stood, the trial court was justified in sustaining the objection to this character of evidence.

The eighth, ninth and tenth assignments are merely the formal ones that the judgment is not justified by the law and the evidence. The contract was clear and explicit in its terms that if the payments were not made as set forth therein, the plaintiff might declare a forfeiture and recover the property involved, retaining the amounts paid under the contract as liquidated damages. The record shows clearly that the payment of $500 was not made as required unless defend-

ant were given credit for sales which were, in reality, a depletion of the capital assets of the outfit as of the time he purchased an interest therein. Since, in our opinion, the contract does not authorize such credits to be given, defendant failed to comply with the provisions thereof and plaintiff was within his rights in bringing an action to cancel the contract and recover the property.

The judgment of the trial court is necessarily affirmed.

McALISTER and ROSS, JJ., concur.