545 P.2d 421

Jamee H. BARRETT, Appellant,

v.

B. L. MELTON and Marie Melton,
his wife, Appellees.

No. 11760.

Supreme Court of Arizona,
In Division.

Jan. 16, 1976.

Thomas S. Barrett, Phoenix, for appellant.

Otto H. Linsenmeyer and Frank E. Dickey, Jr., Phoenix, for appellees.

CAMERON, Chief Justice.

This is an appeal from a judgment quieting title to a narrow strip of property along a fence line between residential property owned by the plaintiffs, Dr. and Mrs. B. L. Melton, and the defendant, Jamee H. Barrett.

We must answer the following questions on appeal:

1. Were plaintiffs' answers to defendant's interrogatories properly admitted as substantive evidence on behalf of plaintiff?

2. Did the trial court err in granting plaintiffs' costs for their surveying expenses and attorney's fees?

3. Is the appeal frivolous?

The facts necessary for a determination of this appeal are as follows. Plaintiffs Dr. and Mrs. B. L. Melton (Dr. Melton is now deceased) were owners of Lot 37, Country Club Manor, in Phoenix, Arizona. In 1940 they had constructed a 3½ foot fence along the western edge of their property, but approximately 6 inches inside their property line. A hedge of oleanders was planted inside this fence. The oleanders grew to the point that they competely obscured the fence. Sometime after this, defendant Mrs. Jamee Barrett purchased Lot 49 of Country Club Manor which lot abuts Lot 37 along the east edge of Lot 49.

In May 1972, defendant had installed a 6 foot high, split-cedar fence which fence was intended to run along her east property line. The posts were set up against the 3½ foot fence on Lot 37, and the fence was thus constructed on plaintiff's property. The posts were set in concrete on 4 May 1972 and the installation of the fence was completed on 8 May 1972. Defendant at various times has offered two reasons

for her having the fence constructed: (1) In late April 1972 plaintiffs trimmed their oleander bushes and defendant realized then for the first time that she was not in compliance with a Phoenix City Ordinance requiring swimming pools to be enclosed by fences at least five feet high; and (2) the fence was necessary to prevent dogs owned by plaintiffs and their guests from entering onto defendant's property.

On the night of 4 May 1972, after the posts had been set in concrete on plaintiffs' property, Mrs. Melton telephoned defendant's house. She spoke initially to Mrs. Barrett asking if a "fence survey" had been made. Defendant did not answer directly, but told Mrs. Melton that she would have to speak to defendant's husband. What transpired next is unclear. Mrs. Melton testified that Mrs. Barrett's husband hung up on her, while both Mrs. Barrett and her husband stated that, after some further conversation, Mrs. Melton broke the connection.

In any event, plaintiffs then had their lot re-surveyed. On 22 May 1972, plaintiffs mailed, pursuant to A.R.S. § 12–1103, a quitclaim deed and $5.00 to defendant. Defendant did not execute or return the deed, but in a letter to plaintiffs' attorney offered to purchase the disputed portion of Lot 37.

Plaintiffs brought suit to quiet title and the matter went to trial on 16 May 1973. It was not disputed that the fence encroached upon plaintiffs' property by not more than five inches at any point for a maximum distance of 102.2 feet. Defendant, however, contended that the plaintiffs knowingly allowed the defendant to build the offending fence before objecting. The court entered a judgment on 11 July 1973, quieting title to Lot 37 in the plaintiffs and ordering defendant to remove the fence. The court also granted judgment in favor of plaintiffs in the amount of $223.00 for surveying expenses, attorney's fees in the amount of $850.00, and costs in the amount of $100.55. This appeal followed.

## INTERROGATORY ANSWERS AS EVIDENCE

Prior to trial, the defendant served interrogatories upon the plaintiffs, the interrogatories stating:

"Pursuant to Rule 33 of Civil Procedure, Defendant, Jamee H. Barrett, by and through her attorneys Jack J. Rappeport and Thomas S. Barrett, propound the following Interrogatories to the Plaintiffs, and each of them, to be answered separately and fully in writing, and under oath. * * *"

The interrogatories were answered jointly by Dr. and Mrs. Melton. Dr. Melton did not appear at trial due to a terminal illness from which he later died. The court, however, accepted into evidence the joint answers of the plaintiffs to defendant's interrogatories. Defendant now argues that as to Dr. Melton the answers were inadmissible as "self-serving hearsay."

The admissibility of evidence is not affected by its being self-serving. *Sampson v. Transport Indemnity Company,* 1 Ariz.App. 529, 405 P.2d 467 (1965); cf. *Richfield Oil Co. v. Estes,* 55 Ariz. 81, 98 P.2d 851 (1940). We believe, however, that as to the absent plaintiff, Dr. B. L. Melton, the answers were hearsay and not within any valid exception to the hearsay rule.

Rule 33(b), Arizona Rules of Civil Procedure, provides that answers to interrogatories may be used "to the extent permitted by the rules of evidence." Such answers when proffered by the answering party as substantive evidence are hearsay and inadmissible. When offered by the opposing party, interrogatories fall within the admissions of a party exception to the hearsay rule and are admissible, as the rules explicitly provide; this is the only sense in which the allegation that the answers are "self-serving" is relevant. The analogy to depositions and prior recorded testimony is faulty due to the absence of cross-examination contemporaneous with the preparation of the answers. See 4A Moore's Federal Practice ¶ 33.29 at 33–169; *Lobel v. American Airlines,* 192 F.2d 217 (2nd Cir. 1951), cert. denied 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703 (inadmissible as self-serving); *Haskell Plumbing & Heating Co. v. Weeks,* 237 F.2d 263, 16 Alaska 436 (9th Cir. 1956) (self-serving).

We believe it was error to admit the interrogatories at this time. This is not, however, fatal to the lawsuit. A review of the answers indicates that the error is harmless, particularly when, as here, the case is tried to a judge and not a jury. *American Eagle Fire Ins. Co. v. Van Denburgh,* 76 Ariz. 1, 257 P.2d 856 (1953). As we have stated:

"* * * We have repeatedly held that if there is sufficient legal and competent evidence in the record to sustain the findings and judgment, when the case is heard before the court, without a jury, it will not be reversed on account of the erroneous admission of evidence unless it affirmatively appears that the erroneous evidence affected the judgment of the court. * * *" *Murphy v. Yeast,* 59 Ariz. 281, 285–286, 126 P.2d 313, 315 (1942). See also Rule 61, Arizona Rules of Civil Procedure, 16 A.R.S.

## EXPENSES

The trial court awarded plaintiffs $223.00 as and for expenses incurred by plaintiffs in having a survey made prior to bringing suit to quiet title.

A.R.S. § 12–1103 reads in part as follows:

"B. If a party, twenty days prior to bringing the action to quiet title to real property, requests the person, other than the state, holding an apparent adverse interest or right therein to execute a quit claim deed thereto, and also tenders to him five dollars for execution and delivery of the deed, and if such person refuses or neglects to comply, the filing of a disclaimer of interest or right shall not avoid the costs and the court may allow

plaintiff, in addition to the ordinary costs, an attorney's fee to be fixed by the court."

We feel that the surveying expenses in this case, while necessary expenses, were not ordinary costs as provided by the above statute.

Our statute, A.R.S. § 12–332, lists taxable costs in the Superior Court and we do not believe it covers the cost of surveying in a suit to quiet title. We agree with the Utah court which said, even though a survey was made in preparation of plaintiff's case, that:

"The final question is whether the trial court erred in instructing the jury that the plaintiffs be awarded one-half of the reasonable costs of making a survey of the land. Such expenditures are not in the nature of costs nor damages. * * *" *Stratford v. Wood,* 11 Utah 2d 251, 253, 358 P.2d 80, 81 (1961).

Defendant also asserts that the award of attorney's fees is unsupported by the record and in particular argues that the award was improper because that portion of plaintiffs' attorney's fees relating to the quiet title aspect of the case was not segregated from the total bill. However, at the conclusion of the trial, the following exchange took place:

"MR. LINSENMEYER: * * * Your, Honor, before I rest, is the Court going to take judicial notice of the facts of the pretrial conference for attorneys fees for the plaintiff, as well as costs based on the time that was indicated spent by plaintiff's attorney?

"THE COURT: I will take note of everything that is presented to the Court.

"MR. LINSENMEYER: Does the Court wish me to take the stand?

"THE COURT: No, I am not asking you to take the stand.

"MR. LINSENMEYER: But the Court will consider the statements made at pretrial. Fine, I rest."

■ From the above statements, it is apparent that the court prior to trial heard evidence relating to attorney's fees. We do not, however, have before us a transcript of the pretrial conference:

" * * * We must, therefore, assume that the evidence was sufficient to support the judgment of the trial court. * * *" *Patterson v. Patterson,* 63 Ariz. 499, 502–503, 163 P.2d 850, 851 (1945).

## FRIVOLOUS APPEAL

A.R.S. § 12–2106 reads as follows:

"When the supreme court is of the opinion that an appeal has been taken for delay, and that there was not sufficient grounds for taking an appeal, it may include in its judgment an additional amount, not exceeding ten per cent of the judgment appealed from, if the judgment is for the recovery of money, and not exceeding five hundred dollars in other cases, as damages for a frivolous appeal."

■ Plaintiff contends that this appeal is frivolous and for the purpose of delay, and that costs should be assessed according to A.R.S. § 12–1206. We disagree.

Although we do not believe that defendant should prevail on appeal, it does not necessarily follow that this is a frivolous appeal. Not all unsuccessful appeals are frivolous. In the instant case, there were questions raised upon which reasonable men and attorneys could differ. We therefore decline to award costs on appeal.

Affirmed as modified.

STRUCKMEYER, V. C. J., and HAYS, J., concur.