Gabrielli, J.
On this appeal, we must decide whether fraud on the part of a seller-beneficiary of an irrevocable letter of credit may be successfully asserted as a defense against holders of drafts drawn by the seller pursuant to the credit. If we conclude that this defense may be interposed by the buyer who procured the letter of credit, we must also determine whether the courts below improperly imposed upon appellant buyer the burden of proving that respondent banks to whom the drafts were made payable by the seller-beneficiary of the letter of credit, were not holders in due course. The issues presented raise important questions concerning the application of the law of letters of credit and the rules governing proof of holder in due course status set forth in article 3 of the Uniform Commercial Code. In addition, we are called upon to determine whether it was proper for the trial court to permit respondents to introduce as direct evidence their responses to interrogatories served by appellant, as part of respondents’ case-in-chief.
In April, 1971 appellant Cambridge Sporting Goods Corporation (Cambridge) entered into a contract for the manufacture and sale of boxing gloves with Duke Sports (Duke), a Pakistani corporation. Duke committed itself to the manufacture of 27,936 pairs of boxing gloves at a sale price of $42,576.80; and arranged with its Pakistani bankers, United Bank Limited *256 (United) and The Muslim Commercial Bank (Muslim), for the financing of the sale. Cambridge was requested by these banks to cover payment of the purchase price by opening an irrevocable letter of credit with its bank in New York, Manufacturers Hanover Trust Company (Manufacturers). Manufacturers issued an irrevocable letter of credit obligating it, upon the receipt of certain documents indicating shipment of the merchandise pursuant to the contract, to accept and pay, 90 days after acceptance, drafts drawn upon Manufacturers for the purchase price of the gloves.
Following confirmation of the opening of the letter of credit, Duke informed Cambridge that it would be impossible to manufacture and deliver the merchandise within the time period required by the contract, and sought an extension of time for performance until September 15, 1971 and a continuation of the letter of credit, which was due to expire on August 11. Cambridge replied on June 18 that it would not agree to a postponement of the manufacture and delivery of the gloves because of its resale commitments and, hence, it promptly advised Duke that the contract was canceled and the letter of credit should be returned. Cambridge simultaneously notified United of the contract cancellation.
Despite the cancellation of the contract, Cambridge was informed on July 17, 1971 that documents had been received at Manufacturers from United purporting to evidence a shipment of the boxing gloves under the terms of the canceled contract. The documents were accompanied by a draft, dated July 16, 1971, drawn by Duke upon Manufacturers and made payable to United, for the amount of $21,288.40, one half of the contract price of the boxing gloves. A second set of documents was received by Manufacturers from Muslim, also accompanied by a draft, dated August 20, and drawn upon Manufacturers by Duke for the remaining amount of the contract price.
An inspection of the shipments upon their arrival revealed that Duke had shipped old, unpadded, ripped and mildewed gloves rather than the new gloves to be manufactured as agreed upon. Cambridge then commenced an action against Duke in Supreme Court, New York County, joining Manufacturers as a party, and obtained a preliminary injunction prohibiting the latter from paying drafts drawn under the letter of credit; subsequently, in November, 1971 Cambridge levied on the funds subject to the letter of credit and the *257 draft, which were delivered by Manufacturers to the Sheriff in compliance therewith. Duke ultimately defaulted in the action and judgment against it was entered in the amount of the drafts, in March, 1972.
The present proceeding was instituted by the Pakistani banks to vacate the levy made by Cambridge and to obtain payment of the drafts on the letter of credit. The banks asserted that they were holders in due course of the drafts which had been made payable to them by Duke and, thus, were entitled to the proceeds thereof irrespective of any defenses which Cambridge had established against their transferor, Duke, in the prior action which had terminated in a default judgment. The banks’ motion for summary judgment on this claim was denied and the request by Cambridge for a jury trail was granted. Cambridge sought to depose the petitioning banks, but its request was denied and, as an alternative, written interrogatories were served on the Pakistani banks to learn the circumstances surrounding the transfer of the drafts to them. At trial, the banks introduced no evidence other than answers to several of the written interrogatories which were received over objection by Cambridge to the effect that the answers were conclusory, self-serving and otherwise inadmissible. Cambridge presented evidence of its dealings with Duke including the cancellation of the contract and uncontested proof of the subsequent shipment of essentially worthless merchandise.
The trial court concluded that the burden of proving that the banks were not holders in due course lay with Cambridge, and directed a verdict in favor of the banks on the ground that Cambridge had not met that burden; the court stated that Cambridge failed to demonstrate that the banks themselves had participated in the seller’s acts of fraud, proof of which was concededly present in the record. The Appellate Division affirmed, agreeing that while there was proof tending to establish the defenses against the seller, Cambridge had not shown that the seller’s acts were "connected to the petitioners [banks] in any manner.” The Appellate Division also held that CPLR 3117 "seemingly” authorized the introduction of the challenged interrogatories into evidence.
We reverse and hold that it was improper to direct a verdict in favor of the petitioning Pakistani banks. We conclude that the defense of fraud in the transaction was established and in that circumstance the burden shifted to petitioners to prove *258 that they were holders in due course and took the drafts for value, in good faith and without notice of any fraud on the part of Duke (Uniform Commercial Code, § 3-302). Additionally, we think it was improper for the trial court to permit petitioners to introduce into evidence answers to Cambridge’s interrogatories to demonstrate their holder in due course status.
This case does not come before us in the typical posture of a lawsuit between the bank issuing the letter of credit and presenters of draffs drawn under the credit seeking payment (see, generally, White and Summers, Uniform Commercial Code, § 18-6, pp 619-628). Because Cambridge obtained an injunction against payment of the drafts and has levied against the proceeds of the drafts, it stands in the same position as the issuer, and, thus, the law of letters of credit governs the liability of Cambridge to the Pakistani banks.[1] Article 5 of the Uniform Commercial Code, dealing with letters of credit, and the Uniform Customs and Practice for Documentary Credits promulgated by the International Chamber of Commerce set forth the duties and obligations of the issuer of a letter of credit.[2] A letter of credit is a commitment *259 on the part of the issuing bank that it will pay a draft presented to it under the terms of the credit, and if it is a documentary draft, upon presentation of the required documents of title (see Uniform Commercial Code, § 5-103). Banks issuing letters of credit deal in documents and not in goods and are not responsible for any breach of warranty or nonconformity of the goods involved in the underlying sales contract (see Uniform Commercial Code, § 5-114, subd [1]; Uniform Customs and Practice, General Provisions and Definitions [c] and article 9; O’Meara Co. v National Park Bank of N. Y., 239 NY 386; Laudisi v American Exch. Nat. Bank, 239 NY 234; Rosenfeld v Banco Internacional, 27 AD2d 826; Imbrie v Nagase & Co., 196 App Div 380; Frey & Son v Sherburne Co., 193 App Div 849, 853; American Steel Co. v Irving Nat. Bank, 266 F 41; 1955 Report of NY Law Rev Comm, vol 3, Study of Uniform Commercial Code, pp 1654-1655). Subdivision (2) of section 5-114, however, indicates certain limited circumstances in which an issuer may properly refuse to honor a draft drawn under a letter of credit or a customer may enjoin an issuer from honoring such a draft.[3] Thus, where "fraud in the transaction” has been shown and the holder has not taken the draft in circumstances that would make it a holder in due course, the customer may apply to enjoin the issuer from paying drafts drawn under the letter of credit (see 1955 Report of NY Law Rev Comm, vol 3, pp 1654-1659). This rule represents a codification of precode case law most eminently articulated in the landmark case of Sztejn v Schroder Banking Corp. (177 Misc 719, Shientag, J.) where it was held that the shipment of cowhair in place of bristles amounted to more than mere breach of warranty but fraud sufficient to constitute grounds for enjoining payment of drafts to one not a holder in due course (see, also, Bank of Montreal v Recknagel, 109 NY 482; Dulien Steel Prods, v Bankers Trust Co., 298 F2d 836, 841; Old Colony Trust Co. v Lawyers Tit. & Trust Co., 297 *260 F 152, 158; Finkelstein, Legal Aspects of Commercial Letters of Credit, pp 246-248). Even prior to the Sztejn case, forged or fraudulently procured documents were proper grounds for avoidance of payment of drafts drawn under a letter of credit (Finkelstein, Legal Aspects of Commercial Letters of Credit, pp 231-236-247); and cases decided after the enactment of the code have cited Sztejn with approval (see Banco Tornquist, S. A. v American Bank & Trust Co., 71 Misc 2d 874, supra; Banco Espanol de Credito v State St. Bank & Trust Co., 409 F2d 711, 712-713; Dynamics Corp. of Amer. v Citizens & Southern Nat. Bank, 356 F Supp 991, 996-998; Intraworld Ind. v Girard Trust Bank, 336 A2d 316, 324-327, supra).
The history of the dispute between the various parties involved in this case reveals that Cambridge had in a prior, separate proceeding successfully enjoined Manufacturers from paying the drafts and has attached the proceeds of the drafts. It should be noted that the question of the availability and the propriety of this relief is not before us on this appeal.[4] The petitioning banks do not dispute the validity of the prior injunction nor do they dispute the delivery of worthless merchandise. Rather, on this appeal they contend that as holders in due course they are entitled to the proceeds of the drafts irrespective of any fraud on the part of Duke (see Uniform Commercial Code, § 5-114, subd [2], par [b]). Although precisely speaking there was no specific finding of fraud in the transaction by either of the courts below, their determinations were based on that assumption. The evidentiary facts are not disputed and we hold upon the facts as established, that the shipment of old, unpadded, ripped and mildewed gloves rather than the new boxing gloves as ordered by Cambridge, constituted fraud in the transaction within the meaning of subdivision (2) of section 5-114. It should be noted that the drafters of section 5-114, in their attempt to codify the Sztejn case and in utilizing the term "fraud in the transaction”, have eschewed a dogmatic approach and adopted a flexible standard to be applied as the circumstances of a particular situation mandate.[5] It can be difficult to draw a precise line between cases *261 involving breach of warranty (or a difference of opinion as to the quality of goods) and outright fraudulent practice on the part of the seller. To the extent, however, that Cambridge established that Duke was guilty of fraud in shipping, not merely nonconforming merchandise, but worthless fragments of boxing gloves, this case is similar to Sztejn.
If the petitioning banks are holders in due course they are entitled to recover the proceeds of the drafts but if such status cannot be demonstrated their petition must fail.[6] The parties are in agreement that section 3-307 of the code governs the pleading and proof of holder in due course status and that section provides:
"(1) Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue
"(a) the burden of establishing it is on the party claiming under the signature; but
"(b) the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required.
"(2) When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense.
"(3) After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course.”
Even though section 3-307 is contained in article 3 of the code dealing with negotiable instruments rather than letters of credit, we agree that its provisions should control in the instant case. Section 5-114 (subd [2], par [a]) utilizes the holder in due course criteria of section 3-302 of the code to determine *262 whether a presenter may recover on drafts despite fraud in the sale of goods transaction. It is logical, therefore, to apply the pleading and practice rules of section 3-307 in the situation where a presenter of drafts under a letter of credit claims to be a holder in due course. In the context of section 5-114 and the law of letters of credit, however, the "defense” referred to in section 3-307 should be deemed to include only those defenses available under subdivision (2) of section 5-114, i.e., noncompliance of required documents, forged or fraudulent documents or fraud in the transaction. In the context of a letter of credit transaction and, specifically subdivision (2) of section 5-114, it is these defenses which operate to shift the burden of proof of holder in due course status upon one asserting such status (Banco Espanol de Crédito v State St. Bank & Trust Co., 409 F2d 711, supra). Thus, a presenter of drafts drawn under a letter of credit must prove that it took the drafts for value, in good faith and without notice of the underlying fraud in the transaction (Uniform Commercial Code, § 3-302).
Turning to the rules of section 3-307 as they apply to this case, Cambridge failed to deny the effectiveness of the signatures on the draft in its answer and, thus, these are deemed admitted and their effectiveness is not an issue in the case. However, this does not entitle the banks as holders to payment of the drafts since Cambridge has established "fraud in the transaction”. The courts below erroneously concluded that Cambridge was required to show that the banks had participated in or were themselves guilty of the seller’s fraud in order to establish a defense to payment. But, it was not necessary that Cambridge prove that United and Muslim actually participated in the fraud, since merely notice of the fraud would have deprived the Pakistani banks of holder in due course status.
In order to qualify as a holder in due course, a holder must have taken the instrument "without notice * * * of any defense against * * * it on the part of any person” (Uniform Commercial Code, § 3-302, subd [1], par [c]). Pursuant to subdivision (2) of section 5-114 fraud in the transaction is a valid defense to payment of drafts drawn under a letter of credit. Since the defense of fraud in the transaction was shown, the burden shifted to the banks by operation of subdivision (3) of section 3-307 to prove that they were holders in due course and took the drafts without notice of Duke’s alleged fraud. As *263 indicated in the Official Comment to that subdivision, when it is shown that a defense exists, one seeking to cut off the defense by claiming the rights of a holder in due course "has the full burden of proof by a preponderance of the total evidence” on this issue. This burden must be sustained by "affirmative proof’ of the requisites of holder in due course status (see Official Comment, McKinney’s Cons Laws of NY, Book 62 Vi, Uniform Commercial Code, § 3-307, p 212). It was error for the trial court to direct a verdict in favor of the Pakistani banks because this determination rested upon a misallocation of the burden of proof; and we conclude that the banks have not satisfied the burden of proving that they qualified in all respects as holders in due course, by any affirmative proof. The only evidence introduced by the banks consisted of conclusory answers to the interrogatories which were improperly admitted by the Trial Judge (see discussion, infra). The failure of the banks to meet their burden is fatal to their claim for recovery of the proceeds of the drafts and their petition must therefore be dismissed.
The final question of the admissibility of the answers to Cambridge’s interrogatories remains to be discussed. CPLR 3117, which governs the admissibility of interrogatories as well as depositions (CPLR 3131), provides, in pertinent part,
"(a) * * * At the trial * * * any part or all of a deposition, so far as admissible under the rules of evidence, may be used in accordance with any of the following provisions:
* * *
"2. The deposition of a party * * * may be used for any purpose by an adversely interested party; and
"3. the deposition of any person may be used by any party for any purpose against any other party who was present or represented at the taking of the deposition * * * provided the court finds: * * *
"(ii) that the witness is at a greater distance than one hundred miles from the place of trial or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition ”. (Emphasis added.)
The general rule under CPLR 3117 (subd [a], par 2) subject to the exceptions set forth in paragraph 3 of subdivision (a) of the statute, is that answers to interrogatories may be introduced only by an adverse party and not by the party responding to the interrogatories (Wojtas v Fifth Ave. Coach Corp., 23 *264 AD2d 685). The trial court concluded, however, that the interrogatories were admissible under the exception contained in CPLR 3117 (subd [a], par 3, cl [ii]). The court incorrectly reasoned that, because Cambridge served the interrogatories, it was not in a position to assert a deprivation of the right to cross-examine. Cambridge, however, did not forfeit its right to cross-examination because it was the banks who offered the answers as evidence-in-chief. While CPLR 3131 provides that interrogatories may be utilized to the same extent as depositions, a party serving interrogatories is certainly not "present” or "represented” at the time the answers are given as required by CPLR 3117 (subd [a], par 3) and does not have the opportunity to impeach or inquire into self-serving responses rendered by the party interrogated or its agent. The adversary therefore is effectively deprived of the right to cross-examine (cf. Stern v Inwood Town House, 22 AD2d 650). The self-serving answers of a party to written interrogatories which are not subject to the scrutiny of cross-examination may not be introduced by that party under CPLR 3117 (subd [a], par 3, cl [ii]) (see, also, Haskell Plumbing & Heating Co. v Weeks, 237 F2d 263, 267, applying rules 26 [d] and 33 of the Federal Rules of Civil Procedure, identical respectively to CPLR 3117 and 3131; Ann., 13 ALR3d 1312, 1323-1330). CPLR 3117 (subd [a]) articulates the fundamental rule that depositions and interrogatories may be introduced only so far as the rules of evidence permit and the basis for this rule is the fact that matter contained in these discovery devices constitutes hearsay and is admissible as evidence-in-chief only insofar as a hearsay exception is available (Jobse v Connolly, 60 Misc 2d 69, 70 [Younger, J.]; 3A Weinstein-Korn-Miller, NY Civ Prac, par 3117.04). Where the party who served the interrogatories is the proponent, the hearsay problem is eliminated because the answers are admissible under the admissions exception to the hearsay rule (cf. Richardson, Evidence [10th ed], § 209, p 187), but where the party responding is the proponent, the hearsay rule presents a barrier to admission (Jobse v Connolly, supra; Barrett v Melton, 112 Ariz 605, 545 P2d 421, 423). CPLR 3117 (subd [a], par 3), referred to as the "deposition exception to the hearsay rule”, permits any party to introduce answers to interrogatories if certain conditions are met but does not provide an exception to the hearsay barrier under the circumstances of this case because, as we have noted, the adversary, Cambridge, did not have the opportunity to cross-examine the declarants (representatives of the banks) who responded to the *265 interrogatories, an essential requirement for the application of the exception (see CPLR 3117, subd [a], par [3]; 3113, subd [c]; Stern v Inwood Town House, 22 AD2d 650, supra; cf. CPLR 4517).
There is an additional reason why the banks may not rely upon CPLR 3117 (subd [a], par 3, cl [ii]) to sustain the admission of the answers. That subdivision requires that the absence of a witness must not have been procured by the party seeking to offer a deposition or responses to interrogatories. The unavailability of the declarants responding to the interrogatories was at least countenanced by the proponent banks. Muslim and United may not be permitted to capitalize on their own failure to produce a prospective witness or witnesses under their control and thereby deprive Cambridge of the opportunity to cross-examine them (see Jobse v Connolly, supra; Great Plains Supply Co. v Mobil Oil Co., 172 NW2d 241, 252-253 [ND]). The answers to Cambridge’s interrogatories were therefore improperly admitted into evidence and, as we have noted, in the absence of this evidence, there is absolutely no proof in the record on the part of the banks to sustain their burden of demonstrating holder in due course status; therefore, their petition to obtain the proceeds of the drafts and to set aside Cambridge’s levy thereupon should be dismissed.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, etc.

. Cambridge has no direct liability on the drafts because it is not a party to the drafts which were drawn on Manufacturers by Duke as drawer; its liability derives from the letter of credit which authorizes the drafts to be drawn on the issuing banks. Since Manufacturers has paid the proceeds of the drafts to the Sheriff pursuant to the levy obtained in the prior proceeding, it has discharged its obligation under the credit and is not involved in this proceeding.

. It should be noted that the Uniform Customs and Practice controls, in lieu of article 5 of the code, where, unless otherwise agreed by the parties, a letter of credit is made subject to the provisions of the Uniform Customs and Practice by its terms or by agreement, course of dealing or usage of trade (Uniform Commercial Code, § 5-102, subd [4]). No proof was offered that there was an agreement that the Uniform Customs and Practice should apply, nor does the credit so state (cf. Oriental Pacific [U. S. A.] v Toronto Dominion Bank, 78 Misc 2d 819). Neither do the parties otherwise contend that their rights should be resolved under the Uniform Customs and Practice. However, even if the Uniform Customs and Practice were deemed applicable to this case, it would not, in the absence of a conflict, abrogate the precode case law (now codified in Uniform Commerical Code, § 5-114) and that authority continues to govern even where article 5 is not controlling (see White and Summers, op. cit, pp 613-614, 624-625). Moreover, the Uniform Customs and Practice provisions are not in conflict nor do they treat with the subject matter of section 5-114 which is dispositive of the issues presented on this appeal (see Banco Tornquist, S. A. v American Bank & Trust Co., 71 Misc 2d 874, 875; Intraworld Ind. v Girard Trust Bank, 336 A2d 316, 322 [Pa]; Harfield, Practice Commentary, McKinney’s Cons Laws of NY, Book 62½, Uniform Commercial Code, § 5-114, p 686). Thus, we are of the opinion that the Uniform Customs and Practice, where applicable, does not bar the relief provided for in section 5-114 of the code.

. Subdivision (2) of section 5-114 of the Uniform Commercial Code provides that, "[u]nless otherwise agreed when documents appear on their face to comply with the terms of a credit but ** * * there is fraud in the transaction (a) the issuer must honor the draft or demand for payment if honor is demanded by a * * * holder of the draft * * * which has taken the draft * * * under the credit and under circumstances which would make it a holder in due course (Section 3-302) * * *; and "(b) in all other cases as against its customer, an issuer acting in good faith may honor the draft * * * despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor.”

. It is not necessary, therefore, for us to reach the difficult question whether the Pakistani banks were indispensible parties in the first action (see 1955 Report of NY Law Rev Comm, pp 1667-1668; cf. Lantz Int. Corp. v Industria Termotecnica Campana, 358 F Supp 510).

. In its original version section 5-114 contained the language "fraud in a required document” (see 1955 Report of NY Law Rev Comm, pp 1655-1658).

. Although several commentators have expressed a contrary view, the weight of authority supports the proposition that fraud on the part of the seller-beneficiary may not be interposed as a defense to payment against a holder in due course to whom a draft has been negotiated (see Finkelstein, op. cit, p 246; Ward and Harfield, Bank Credits and Acceptances, pp 94-98; 1955 Report of NY Law Rev Comm, pp 1662-1663, and authorities cited therein). This approach represents the better view that as against two innocent parties (the buyer and the holder in due course) the former, having chosen to deal with the fraudulent seller, should bear the risk of loss (see Harfield, Practice Commentary, McKinney’s Cons Laws of NY, Book 62½, Uniform Commercial Code, § 5-114, pp 686-687).