# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 5, 2012 Session

## H. JEWELL TINDELL v. CALLIE A. WEST ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 178105-3    Michael W. Moyers, Chancellor**

---

**No. E2011-01744-COA-R3-CV-FILED-APRIL 30, 2012**

---

A dispute over the extent of lawn being mowed and the manner in which it was being mowed escalated into this action filed by H. Jewell Tindell against her neighbors, Callie A. West and husband, M. Adam West (collectively "the Defendants"). The Plaintiff asked that the boundary line between the neighboring lots be established and demanded compensatory and punitive damages. The Defendants filed a third-party complaint against their predecessor in title, Sandra Stallings, based upon her alleged misrepresentation in her disclosure to them. After a bench trial, the court awarded the Plaintiff a judgment establishing the boundary according to one of her two surveys, and awarded her the cost of her surveys as damages. The court also ordered the Defendants to remove all encroachments. The court found that Ms. Stallings failed to disclose known encroachments and held her liable to the Defendants for one-half of the cost of the surveys. The Defendants appeal. We reverse that part of the judgment awarding as damages the cost of the surveys. In all other respects, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed in Part and Affirmed in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Callie A. West and M. Adam West, Knoxville, Tennessee, appellants, pro se.

James M. Cornelius, Jr., and James P. Moneyhun, Jr., Knoxville, Tennessee, for the appellee, H. Jewell Tindell.

No appearance by or on behalf of appellee Sandra Stallings.

**OPINION**

**I.**

This is a dispute between the neighboring owners of lots 25 and 26 in the Huntington Place subdivision in Knoxville. Our Figure 1 is an edited[1] reproduction of a trial exhibit that shows the area in dispute as well as the relative locations of the lots. The Plaintiff's home is on lot 26. The Defendants' lot 25 is improved with their residence. Sandra Stallings, as previously noted, is the Defendants' predecessor in title to lot 25. She purchased the lot in 1991.



Figure 1.

Like many disputes, this one had its beginning in happier times when the owners of the adjacent lots were friends. The Plaintiff purchased lot 26 from Mr. and Mrs. Keith Cofer in October 2001. The Cofers informed the Plaintiff that some of the deeded property was inside a fence that enclosed Ms. Stallings' swimming pool. Ms. Stallings built the pool in 1998 or 1999. There was, at the time Ms. Stallings built her pool, an existing fence ("the Existing Fence") on the Cofers' property that runs generally parallel to the property line separating lots 25 and 26; it is a few feet west of what the trial court determined to be the real property line. The Existing Fence is illustrated on Figure 1 and labeled with our

---

[1]The edits are the addition of the reference to "north" in the lower right hand corner and the addition of the following words: Tindell, West, Existing Fence and Stallings Fence.

nomenclature. Ms. Stallings needed a fence around her pool, but could not afford to fence her property. The Cofers gave her permission to tie into the Existing Fence. Ms. Stallings also constructed a short fence ("the Stallings Fence") that runs from the northwest corner of her house to the Existing Fence. It is shown on Figure 1 as a broken line. Ms. Stallings knew that the result of tying the fences together was to enclose some of the Cofers' property within the fenced area, but she had no intention of claiming that property. Ms. Stallings would later testify that she did not know the location of the true boundary line between lots 25 and 26. In 2000, Ms. Stallings built a rock wall along the west end of her pool to keep mud from washing into the pool. Even though she did not know it, the rock wall encroached slightly, less than two feet, onto the Cofers. She also installed some landscaping in the general vicinity of the Existing Fence with the permission of the Cofers. Ms. Stallings also extended her driveway to the west to accommodate another vehicle. Unbeknownst to Ms. Stallings, the driveway encroached about 1.5 feet onto the Cofers.

When the Plaintiff bought lot 26, she was told by the Cofers that the fence was not on the boundary line. She "walked" the real line with the Cofers. The Plaintiff mentioned the discrepancy to Ms. Stallings. Ms. Stallings confirmed that the fence was not on the line. Ms. Stallings stated that she would move the Stallings Fence and landscaping if and when the Plaintiff wanted her to move it. They reached an informal agreement whereby Ms. Stallings would maintain the property inside the fence so long as it was fenced. The Plaintiff did not know at that time that the driveway and the stone wall each also encroached slightly on her property.

The Plaintiff's relationship with Ms. Stallings was very amicable. They helped each other out, especially when one was away. This extended to a small strip of grass between their driveways in the front of their respective properties near the street. Whichever neighbor was mowing at the time simply "mowed all of it." There was never an issue as long as Ms. Stallings owned lot 25.

Ms. Stallings sold lot 25 to the Defendants in December 2008. Even though she knew that some of the Plaintiff's property was within her fence, she did not inform the Defendants. As the seller of lot 25, Ms. Stallings signed a disclosure form that stated she was not aware of "[a]ny encroachments, easements, or similar items that may affect [her] ownership interest in the property." She testified at trial that she did not consider the fenced area to be an encroachment because of her understanding with the Plaintiff that she would move the fence if the Plaintiff wanted it moved.

Problems between the Plaintiff and the Defendants began in the 2009 mowing season. The Plaintiff testified that she enjoyed mowing and caring for her yard, but began noticing that all the grass between the driveways had been mowed so short that it took the dirt along

with the grass in places. From the Plaintiff's perspective, the grass had been "scalped." According to the Plaintiff, she left a note on the Defendants' door stating that the fence was not on the property line and that she did not want Ms. West to mow the grass over the property line. She did not identify the location of the property line. According to the Plaintiff, Ms. West relented for the remainder of 2009, but started her "scalping" again with the 2010 mowing season. Ms. West denied receiving the note. The Plaintiff hired a surveyor to stake the boundary line and sent a letter addressed to "Ms. Callie A. West" demanding that she stop mowing the Plaintiff's property and move the fence and all encroachments. Mrs. West responded by letter, stating, among other things, that the fences had been up for 20 years and that the fences would not be moved. The Plaintiff then obtained a second survey and retained counsel who sent a demand letter to the Defendants, along with the survey, before filing this action to quiet title and for damages.

The Defendants retained counsel and answered the complaint[2]. They did not raise a statute of limitations defense. They also filed a third-party complaint against Ms. Stallings based on her failure to disclose the encroachments.

The Defendants discharged their attorney sometime before the trial began. They proceeded without counsel to trial. On the morning of trial, the Defendants raised, for the first time, the contention that the claim against them was barred by Tenn. Code Ann. § 28-2-103 (2000). The pertinent part of the statute, subsection (a), states as follows:

> No person or anyone claiming under such person shall have any
> action, either at law or in equity, for the recovery of any lands,
> . . . but within seven (7) years after the right of action accrued.

The Plaintiff objected to any statute of limitations defense as untimely and asserted that it was waived because it was not raised in the answer. The court proceeded directly to the proof without ruling on the objection. The proof included testimony from two surveyors for the Plaintiff. No expert testimony was offered on behalf of the Defendants. The Plaintiff's surveyors stated that the rock wall encroached on the Plaintiff by 1.13 feet and the driveway by 1.75 feet.

During closing argument, the Defendants again made reference to Tenn. Code Ann. §28-2-103. The court interrupted the argument and stated that since the defense had not been raised in the pleadings "it's kind of late in the day to be bringing it up now, unfortunately."

---

[2]The original complaint did not include Mr. West. He was named in an amended complaint.

The court announced its decision from the bench. The court noted that there was no expert testimony presented by the Defendants. It adopted one of the surveys introduced by the Plaintiff to establish the true line separating the lots. Accordingly, the court found that the Stallings Fence, the rock wall and the Wests' driveway encroached upon the Plaintiff's property and ordered the Defendants to remove the encroachments so that the Plaintiff could move the Existing Fence to the boundary line if she so chooses. The court found that Ms. Stallings had a duty to disclose the encroachments and that she did in fact know about the encroachment of the fence but not the other encroachments. The court found that the Plaintiff would not have needed a survey if this dispute had not arisen and that the Plaintiff's damages were the $3,130 she paid to the surveyors for work done in preparing surveys. The court awarded the Defendants a judgment against Ms. Stallings in the amount of $1,565 based on a finding that Ms. Stallings had incomplete knowledge of the encroachments and was only partially responsible for the total damages. The court incorporated its findings into a judgment which was entered in due course. The Defendants filed a timely notice of appeal.

## II.

The Defendants articulate four issues which we have paraphrased and condensed into the following three:

> Whether the court erred in not considering Tenn. Code Ann. §
> 28-2-103 and in not finding the action barred.

> Whether the court erred in ordering the encroachments removed
> rather than awarding damages based on the value of the property
> encroached upon.

> Whether the court erred in awarding the Plaintiff the cost of her
> surveys as damages.

## III.

The Defendants argue that the trial court should have allowed them to amend their answer to assert Tenn. Code Ann. § 28-2-103 as an affirmative defense and that, if the court had done so, they would have prevailed as a matter of law. We must disagree for several reasons. The Defendants acknowledge, as they must, that they did not raise the defense in their answer and that the failure to raise an affirmative defense in an answer or motion generally results in a finding of waiver. *See* Tenn. R. Civ. P. 8.03 and 12.08; **Sands v. State**, 903 S.W.2d 297, 299 (Tenn. 1995). The reason behind the rule is to prevent one party from springing a surprise defense at trial on the other party. **Id**. The Defendants argue that,

despite their failure to raise the defense in their answer, the trial court had the discretion to allow them to raise it as late as trial. *See Steed Realty v. Oveisi*, 823 S.W.2d 195, 197 (Tenn. Ct. App. 1991). The Defendants are correct that a trial court's decision whether to allow a late motion to amend is a discretionary one. *Id*. This Court, therefore, will not reverse the trial court's decision unless there has been an abuse of discretion. *Id*.

The Plaintiff notes several problems with the Defendants' position. First, she points out that they did not file a motion to amend or even make an oral motion to amend. The Defendants simply started talking about the statute in their opening statement and continued to argue it in their closing.

Second, even if we assume that these pro se litigants made such a motion, the trial court did not make a ruling until after the proof was in. The Defendants did not have any proof excluded because of their failure to plead the defense. The trial court handled the matter in such a way that the court could have allowed an amendment after the fact, had one been asked for, to conform to the proof pursuant to Tenn. R. Civ. P. 15.02.

Finally, contrary to the Defendants' position, the proof allows only one conclusion, *i.e.*, that the Plaintiff's action did not accrue until sometime after the Defendants purchased lot 25 in December 2008. The cause of action does not accrue until the possession becomes adverse. *Brown v. Seal*, 179 S.W.3d 481, 484 (Tenn. Ct. App. 2005). "[A]n action under the statute will not be barred if the possession of the land was permitted by the owner." *Griffin v. Lester*, No. W2004-02072-COA-R3-CV, 2005 WL 3199279 at *4 (Tenn. Ct. App. W.S., filed Nov. 30, 2005) (*citing Menefee v. Davidson County*, 260 S.W.2d 283, 285 (Tenn. 1953)). According to all the testimony, Ms. Stallings' use of anything inside the fenced area was permissive. From the outset, she told the Plaintiff that she would move the fence and landscaping if and when the Plaintiff wanted it moved. As to any possession outside the fenced area, that too appears to have occurred with the Plaintiff's permission. The Defendants are correct that "the actual intent to adversely possess the property of another need not be shown." *Lemm v. Adams*, 955 S.W.2d 70, 72 (Tenn. Ct. App. 1997). However, there are several elements of the defense; it was the Defendants' burden to establish all the elements of the adverse possession defense by clear and convincing evidence. *Cumulus Broadcasting v. Shim*, 226 S.W.3d 366, 377 (Tenn. 2007). The evidence in this case preponderates in favor of a finding that, until such time as Ms. Stallings sold lot 25, she was ready and willing, at all times, to relinquish whatever the Plaintiff claimed as her property. Ms. Stallings did not find the true line and assert a claim to it – she depended on the Plaintiff to find the line and she expressed a willingness to comply. This includes even the small sliver of driveway that encroached on the Plaintiff's property.

Courts are not required to grant motions to amend "[i]f the amendment would have been futile." *McCollough v. Johnson City Emergency Physicians*, 106 S.W.3d 36, 47 (Tenn. Ct. App. 2002). Accordingly, for these several reasons, we hold that the trial court did not abuse its discretion in its handling of the would-be statute of limitations defense.

The next issue for our consideration is whether the trial court erred in ordering removal of the encroachments rather than simply awarding damages for the value of the property that was encroached upon. The Defendants argue that "since the maximum encroachment is less than 1.5 feet, [they] should be compelled to pay damages based upon the value of that portion of the property that is the subject of the intrusion rather than being compelled to remove" the encroachments. The Plaintiff points out that the Defendants did not raise this issue with the trial court; they are correct that the first time it was raised was on appeal. It is clear that "issues not raised in the trial court cannot be raised for the first time on appeal." *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991). A finding of waiver is especially appropriate in this case because the Defendants failed to present any evidence of the value of property that they say was the correct measure of damages.

Furthermore, even if we were to reach the issue on the merits, we are not convinced by the Defendants' argument. Following is a short excerpt from their argument:

> *Morrison v. Jones*, 58 Tenn. App. 333, 430 S.W.2d 668 (1968) is probably the fountainhead case. In *Morrison*, the plaintiffs filed an action against defendants, alleging that defendants constructed a building, which encroached on their property. The Chancellor granted a mandatory injunction requiring the removal of the portion of the building encroaching on their property.
>
> On appeal, this Court found that the Chancellor properly found that there was an encroachment, but . . . held that it was improper to issue a mandatory injunction ordering defendants to remove the portion of the building encroaching on the property. Ordering such removal would impose an undue hardship on defendants and result in little, if any, benefit to plaintiffs. Further, despite the principle that the equitable remedy of injunction was required to be applied for with reasonable promptness, the plaintiffs did not file an action and seek a prohibitory injunction when they discovered that an encroachment was being made upon their land or soon

thereafter. Accordingly, the Court said that the appropriate remedy was an award of damages for the value of the land, and remitted the case to the Chancellor to make that determination.

The Defendants cite other cases for the same propositions. We will assume, for the purpose of this opinion, that the Defendants have accurately characterized the facts and holdings of those cases. The present case, however, is much different from the cases upon which the Defendants rely. In those cases, the true owners of the encroached property more or less lulled the encroachers into making substantial improvements. In the present case, the encroacher – Ms. Stallings – asked permission and promised to remove the encroachments if and when that became necessary. Also, the Plaintiff acted promptly once the conflict with the Defendants arose. Furthermore, the burden of moving a few feet of fencing and removing a sliver of concrete approximately 1.75 feet wide is much different from that of removing a building, as in **Morrison**. Accordingly, as an alternative holding, we state that the trial court did nor err in ordering removal of the encroachments rather than awarding damages based on the value of the property affected by the encroachments.

The final issue for our consideration is whether the trial court erred in awarding the Plaintiff damages in the form of the cost of her surveys. The Plaintiff argues that this issue also was waived because the Defendants failed to object to her proof of the cost of the surveys and failed to object to the award of damages. We do not agree that the issue was waived. It is unclear as to when in the proceedings that the Plaintiff believes the Defendants should have "objected" to the trial court's award. A party is not obligated to file a post-judgment motion in a case tried without a jury in order to preserve a challenge to the judgment. *See* Tenn. R. App. P. 3(e)(requiring a motion for new trial to preserve certain issues pertaining to trial "in all cases tried by a jury"). The only other time of which we are aware that the Defendants could have challenged the award was after the court announced its decision from the bench. We are not willing to hold that a litigant will have waived an issue by not arguing with the court after it announces its decision. The only other avenue for finding waiver by the Defendants is in their failure to object to the evidence. We are not willing in this case to hold that the failure to object to the evidence is a concession regarding the merits of that issue.

Accordingly, we will consider the merits of the issue of whether the trial court erred in awarding the cost of the surveys as damages. The measure of damages available in a given case is a question of law for the court to determine. *See **Dickinson v. Bain**,* 921 S.W.2d 189, 193 (Tenn. 1996); ***Uhlhorn v. Keltner***, 723 S.W.2d 131, 135 (Tenn. Ct. App. 1986). Our review of questions of law is de novo. ***Ridings v. Ralph M. Parsons Co.***, 914 S.W.2d 79, 80 (Tenn. 1996).

-8-

The Defendants argue that most states do not award survey costs to a party who prevails in a boundary line dispute. They point out the Plaintiff's inability to cite a single Tennessee case allowing the cost of a survey as an element of damages in a boundary line dispute.

The Plaintiff offers three avenues for affirming the award. First, she says that "the survey fees may have been recoverable as part of her discretionary costs . . . because the surveyors testified at trial and entered their surveys into evidence." However, the Plaintiff concedes that she "did not seek to recover those survey fees as part of her discretionary costs after entry of the judgment." Therefore, even if she is correct that the survey fees were allowable discretionary costs – an issue we do not have to reach – they would become not subject to recovery because the Plaintiff did not "file and serve a motion [seeking those costs] within thirty (30) days after entry of judgment." Tenn. R. Civ. P. 54.04.

Second, the Plaintiff argues that the survey fees were properly allowed as "nominal" damages. According to Black's Law Dictionary, Seventh Edition, nominal damages are damages that are not real; they are damages "in name only" or "trifling." *See also* ***Womack v. Ward***, 186 S.W.2d 619, 620 (Tenn. Ct. App. 1944)(nominal damages allowed when there is a wrong but no proof of actual damages). We are not inclined to treat an award of over $3,000 in a case involving a one or two foot encroachment of a city lot as "trifling." Therefore we find no merit in the argument that the award should be upheld as nominal damages.

Third, the Plaintiff argues that the cost of the surveys are allowable as consequential damages for the trespass to her land. Her only authority is the following quote from ***Meighan v. U.S. Sprint Communications***, 924 S.W.2d 632 (Tenn. 1996):

> the rules for determining damages [in trespass actions] are based upon the purposes for which such actions are maintainable [including t]o give compensation . . . [and t]o punish wrongdoers and deter wrongful conduct. . . .

*Id*. at 641(*quoting* 75 Am. Jur. 2d *Trespass* § 118, at 89 (1991) (brackets and omissions in ***Meighan***). Much of the language in ***Meighan*** was directed at the justification for allowing punitive damages in trespass actions. The trial court did not award punitive damages in the present case. The plaintiff acknowledged in closing that "in all honesty, that's [*i.e.*, damages] not what we're today about." We are not convinced that the Supreme Court's rationale for allowing damages in a trespass action is support for an award of damages to a landowner for surveys that enabled her to learn, for the first time, where her boundary lines are. By all

accounts, the Plaintiff did not know the exact location of the line or the exact extent of the encroachments until after she obtained the surveys.

We have examined the Defendant's cases which they state

> have rejected such an award as being without authority. *See* ***Barrett v. Melton***, 112 Ariz. 605, 545 P.2d 421, 424 (1976); ***Kroulik v. Knuppel***, 634 P.2d 1027, 1031 (Col. App. 1981); ***Howard v. Wills***, 77 Ohio App.3d 133, 139, 601 N.E.2d 515, 519 (1991); ***Stratford v. Wood***, 11 Utah 2d 251, 358 P.2d 80, 81 (1961)("such expenditures are not in the nature of costs nor damages. The surveys were made in preparation of plaintiffs' case."); ***Kincaid v. Morgan***, 188 W.Va. 452, 460 , 425 S.E.2d 128, 136 (1992); ***Geary Land Co. v. Conley***, 175 W. Va. 809, 814, 338 S.E.2d 410, 415 (1985); ***Mader v. Stephenson***, 481 P.2d 664, 665 (Wyo. 1971).

The Plaintiff correctly points out that most of the Defendants' cases involve the question of whether surveys are allowable *as costs*. However, the ***Stratford*** case, referred to in the above quote, did involve the question of whether the court properly instructed the jury that it could include a portion of the cost of the survey as damages. 358 P.2d at 81. The Utah court stated that "such expenditures are not in the nature of costs []or damages." *Id*. The general rule appears to be that the cost of a survey is recoverable, if at all, as a cost allowable only in the discretion of the trial court where permitted by statute or specific court rule. *Annotation*, 97 A.L.R.2d 138, 169 (1964). We hold that the cost of the Plaintiff's surveys are not recoverable *as damages* in a boundary line dispute. The trial court erred in awarding damages based upon the cost of the surveys.

IV.

The judgment of the trial court is reversed in part and affirmed in part. That part of the judgment awarding the Plaintiff damages against the Defendants in the amount of $3,130 and the award against Ms. Stallings are reversed. In all other respects the judgment is affirmed. Costs on appeal are taxed one-half to the appellants, Callie A. West and M. Adam West, and one-half to the appellee, H. Jewell Tindell. This matter is remanded to the trial court for collection of costs and enforcement of the judgment as modified by this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE