# CHARLESTON.

Rowe *et al. v.* Shenandoah Pulp Co.

(Brannon, Judge, dissenting.)

Submitted September 4, 1896—Decided Dec. 2, 1896.

1. Survivorship—Action by Co-Tenants—Death of Party.
    Where two or more co-tenants bring an action of trespass on the case to recover damages caused by the action of the defendant in constructing a dam and thereby overflowing their property, and one of the plaintiffs dies, the suit survives as to the other plaintiffs, and may be proceeded in by them.

2. Measure of Damages—Instruction.
    In such a suit it is proper for the court to instruct the jury that they will find, in assessing damages, if they believe from the evidence any were inflicted upon the property in question by the defendant, only such difference in the value of the said property at the time said damages were inflicted and the value of the said property before the said damage was so done.

3. Abatement—Death of Party—Error.
    In such a suit, if one of the parties plaintiff dies pending the suit the same should abate as to such deceased party; and it is error, upon the appointment of an administrator for the estate of such deceased party, to allow the suit to proceed in the name of such administrator and the survivors at the same time.

W. H. Travers and J. D. Butt for plaintiff in error.

Forrest W. Brown and Frank Beckwith for defendants in error, cited Code, c. 127, s. 2; 10 Leigh, 193; 17 Gratt. 496; 3 Lead. Cas. Am. Law R. Prop. pp. 62, 65; 26 W. Va. 672, 788; 23 W. Va. 453; 12 W. Va. 116; 16 W. Va. 308; 35 W. Va. 278; 2 Gratt. 18; 21 W. Va. 56.

English, Judge:

This was an action of trespass on the case brought by Charles O. Rowe, Nellie A. Batchelder, R. D. E. Rowe,

and James E. Rowe against the Shenandoah Pulp Company, a corporation, in the Circuit Court of Jefferson county. The plaintiffs, in their declaration, say that they were lawfully possessed in fee of a certain tract of land in Jefferson county, W. Va., containing about one acre and two roods, and known as a part of Thorp's Island, by the Shenandoah river, situated between the Shenandoah river and the old government race or canal which tract of land was improved by a dwelling house, and was of great value, to wit the value of one thousand dollars, and that the defendant on the 1st day of October, 1889, wrongfully and unjustly erected, and caused to be erected, maintained, and kept, and still does maintain and keep, a high dam at its pulp mill a short distance below the plaintiffs' premises, across its mill race, and dams back the water in so careless and negligent a manner that from the day and year last aforesaid to the commencement of this suit the water in said race flows over and covers entirely the said land and premises of the plaintiffs, and permanently covers and occupies the same, *etc.*, by reason of which, *etc.*, they are damaged to the amount of one thousand dollars. The defendant demurred to the declaration, and, nothing being alleged by the demurrant in support of the demurrer, the same was overruled, whereupon the defendant pleaded not guilty, and issue was therein joined. On the 24th day of February, 1894, the death of the plaintiff Charles O. Rowe was suggested, and, his estate having been committed to the sheriff of said county, the suit was directed to proceed in the name of J. G. Hurst, administrator of said Charles O. Rowe, and the suit was continued until the next term. On the 1st day of December, 1894, it was ordered that, the suit having been revived on account of the death of one of the plaintiffs, it proceed separately; and thereupon the defendant plead not guilty in the last-named suit, and issue was joined thereon. On the 1st day of December, in the case of *R. D. E. Rowe and others, Plaintiffs* v. *The Shenandoah Pulp Company*, the cause was submitted, to a jury, who heard the evidence, and were adjourned until the 3d day of December, 1894, when the case was argued and submitted, resulting in a verdict for the plaintiffs for six hun-

dred dollars, whereupon the defendant, by its attorney, moved the court in arrest of judgment and for a new trial, which motion on a subsequent day was considered by the court and overruled, and judgment rendered upon said verdict, to which judgment the defendant, by its counsel, excepted and took several bills of exceptions. Bill of exception No. 1 sets forth instructions Nos. 1 and 2 which were asked for by the defendant and were rejected by the court, which instructions read as follows: Defendant's instruction No. 1: "The court instructs the jury that, under the pleadings in this case, the plaintiffs are entitled only to such damages to the property in question as were inflicted upon it by the defendant between the 1st day of October, 1888, and —— October, 1892, the commencement of this suit. (The above instruction rejected by the court)." Defendant's instruction No. 2: "The court instructs the jury that they will find, in assessing damages, if they believe from the evidence any were inflicted upon the property in question by the defendant, only such difference in the value of the said property at the time the said damages were inflicted and the value of the said property before the said damage was so done. (Rejected by the court)." Another bill of exceptions was taken, setting forth the evidence, and the defendant applied for and obtained this writ of error.

The first error assigned and relied on by the defendant is claimed to be that the case should have abated, as to Charles O. Rowe, when his death was suggested, and should have proceeded in the name of the survivors only, and that, instead of this, two suits have been created and are still pending, one in the name of R. D. E. Rowe and others, and the other in the name of J. G. Hurst, sheriff, committee and administrator of Charles O. Rowe, deceased. Is this assignment of error well taken? Our statute (Code, c. 127 s. 2) provides, in speaking of the death of a party, that: "Where such fact occurs in any stage of a cause, whether it be in a court of original or appellate jurisdiction, if it occur as to any of several plaintiffs or defendants, the suit may proceed for or against the others, if the cause of suit survive to or against them. If a plaintiff or defendant die pending any action, whether the cause of action would sur-

vive at common-law or not, the same may be revived and prosecuted to judgment and execution in the same manner as if it were for a cause of action arising out of contract." Hogg, in his valuable work on Pleading and Forms, on page 30, § 43, states the law thus: "Where there are two or more persons who should join in an action *ex delicto* (subject to the rule, however, stated in *Clarkson* v. *Booth*, 17 Gratt. 501) and one should die pending the suit, the action abates as to him." The case of *Clarkson* v. *Booth* was an action of detinue for some slaves. The slaves belonging to some children of B., and, one of the children having died, the personal representatives and surviving children were held to be tenants in common of the slaves, and must join in the action, and, the personal representative dying after action brought, it abates as to him, and can not be revived in the name of another personal representative, but must proceed in the name of the survivors in the action. Moncure, P., in delivering the opinion of the court, on page 501, says: "The court is further of opinion that the plaintiff Robert C. Jones, executor of Francis Porter, having died pending the action, it was properly abated as to him, and further proceeded with in the name of the other plaintiff." So, in the case of *Henning* v. *Farnsworth* (decided by this Court Dec. 11, 1895) 41 W. Va. 548 (23 S. E. 663) Brannon, Judge, delivering the opinion of the Court, says: "At common-law, when a sole plaintiff or defendant died the action abated, if before verdict, and the plaintiff, if the defendant died, or the plaintiff's representative, if it was the plaintiff that died, must bring a new suit. So in the case where there were two or more plaintiffs or defendants. Archb. C. P. 1203; 2 Tidd, Prac. 1170. To remedy this, St. 8 & 9 Wm. III. c. 11, was passed, saying that if one of two or more plaintiffs or defendants died, and the cause of action survive to or against the survivor, the action shall not abate, but go on for or against the surviving party. This statute was enacted here and is found in section 2, chapter 127, Code W. Va. This act was not designed to say what liabilities would or would not follow the estate of the dead party, as it has no relation to the rule that a personal action dies with the person." The

language of our statute (section 2 chapter 127, of the Code) is as follows: "Where such fact (meaning the death of a party) occurs in any stage of a cause, whether it be in a court of original or appellate jurisdiction, if it occur as to any of several plaintiffs or defendants, the suit may proceed for or against the others, if the cause of suit survive to or against them. If a plaintiff or defendant die pending any action, whether the cause of action would survive at common-law or not, the same may be revived and prosecuted to judgment and execution in the same manner as if it were for a cause of action arising out of contract."

Now, when the death of Charles O. Rowe, one of the plaintiffs, occurred and was suggested, did the cause of suit survive to the other three plaintiffs, to wit, Nellie A. Batchelder, R. D. E. Rowe, and James E. Rowe? Upon this question, Freeman on Co-Tenancy and Partition, in section 364, under the head of "Death of Co-Tenant *Pendente Lite*," says: "In the two preceding sections we have considered the effect of the death of one co-tenant after the accruing of a joint cause of action, and before the commencement of a suit thereon, and have found the rule to be universal that all joint causes of action survive to the last survivor, irrespective of the nature of the co-tenancy, and further that, when the cause of action survives after the decease of all the co-tenants, it vests in the personal representative of the last survivor. We shall now consider the effect of the death of one of the co-tenants *pendente lite*, for the purpose of ascertaining whether such death operates as an abatement of the suit. The general rule upon this subject is thus stated by Mr. Jickling: 'If the whole interest of a party dying survive to the other party, so that no claim can be made by or against the representatives of the party so dying, the proceedings do not abate. Survivorship is a characteristic of joint tenancy, and hence, on the death of a joint tenant party to a suit, either as plaintiff or defendant, the suit does not abate.' It is therefore certain that, if the plaintiffs are joint tenants, the death of one does not occasion an abatement of the action." In section 362 the author says: "When the cause of action is joint, it survives to the remaining cotenants on the death of either of them. This is true in every

form of co-tenancy. 'It is to be observed that where damages are to be recovered for a wrong done to tenants in common, or parceners in a personal action, and one of them die, the survivor of them shall have the action; for, albeit the property or estate by several between, yet, as it appeareth here by Littleton, the personal action is joint.'" Citing Co. Litt. 198a; 3 Rob. Prac. 164, where it is said: "But if one of two or more mortgagees or other tenants in common shall die after there is possession adverse to them, and consequently after their cause of action accrues, then the right of action for this cause survives to the surviving mortgagees or tenants in common." *Citing Townsend* v. *Morris*, 6 Cow. 123, where it is held that "the damages for an eviction of two tenants in common to whom lands are granted with warranty are personal, and an action will lie for them by the survivor." Also citing *Nichols* v. *Campbell*, 10 Gratt. 560, where it was held, "Two trustees having brought an action of detinue to recover the trust property, and one. of them dying, the right of action survives to the other, and he may carry on the suit." Robinson further says: "This is according to Lord Coke; for he observes that where damages are to be recovered for a wrong done to tenants in common, or parceners in a personal action, and one of them dies, the survivor of them shall have the action." Co. Litt. 198a. Again, in 9 Gray, 177, in the case of *Tyler* v. *Marther*, it was held that "on the death of some of the complainants pending a complaint on Rev. St. c. 116, for flowing land, the survivors alone may prosecute the suit, though some of the deceased complainants were tenants in common with some of the survivors." Again, in the case of *Watrous' Heirs* v. *McGrew*, 16 Tex. 506, it was held that: "Where one of several tenants in common, who are co-plaintiffs in an action of trespass to try title against a stranger, dies, it is not necessary to make the heirs or representatives of the deceased parties to the action. The right of action of the survivors is not affected by the death of their co-plaintiff" And in 35 Hun, 622, in the case of *Shale* v. *Schantz*, it was held: "An action brought by the members of a firm to recover damages for an alleged slander relating to the financial condition and the credit of the firm does not abate by the death of one of

the plaintiffs during its pendency. The entire cause of action vests in the surviving plaintiffs, and the action may be prosecuted by them."

From these authorities my conclusion is that the cause of action in the case under consideration and the entire cause of action, survived to R. D. E. Rowe, Nellie A. Batchelder, and James E. Rowe, plaintiffs, and that they had the right to prosecute the suit for the entire damages sustained, and not for any aliquot part thereof; but as the jury were instructed at the instance of the defendant that they should assess only three-fourths of said damages in favor of the plaintiffs, this is an error of which the defendant can not complain, although, in my opinion, it would have been the duty of the jury to have found the entire damages to which the original plaintiffs were entitled, and then the plaintiffs could have settled with the estate of the deceased plaintiff.

Did the trial court err in its order of the 24th day of February, 1894, wherein it states that the death of Charles O. Rowe is suggested, and his estate has been committed to the sheriff, and directs that the suit proceed in the name of J. G. Hurst, committee and administrator of said Charles O. Rowe, and in the order of December 1, 1894, wherein it was ordered that said suit in the name of the administrator of Charles O. Rowe do proceed separately from the suit in the name of the surviving plaintiffs? And, if error, is it such as the defendant could complain of? I regard it as plainly error, for the reason that under the law, as we have seen, the suit should have abated as to Charles O. Rowe, and should have proceeded in the name of the surviving plaintiffs; and I consider it error of which the defendant could complain, for this reason: It entails upon the defendant the defense of a suit which is unauthorized by law, as the action should have abated as to said Charles O. Rowe. And this error is more apparent from the fact that, if another one or two of the plaintiffs had died pending the suit, the defendant would have been required to defend two or three suits for the same cause of action.

Did the court err in rejecting instruction No. 2 asked for by the defendant in regard to the measure of damages, in which the court was asked to instruct the jury that, if

they should find from the evidence that any damages were inflicted upon the property in question by the defendant, they should find for only such difference in the value of said property at the time the said damages were inflicted and the value of said property before the said damage was so done? Upon this question this Court laid down the rule in the case of *Stewart* v. *Railroad Co.*, 38 W. Va. 438 (18 S. E. 604) as follows: "The measure of the damages is such a sum as will make the owner whole; that is, the depreciation of the market value of the abutting property caused by the railroad company laying their track and running their trains in the street. In such case, if the fair market value of the abutting property is as much immediately after the construction of the railroad as it was immediately before such improvement was made, no damages are sustained for which a recovery can be had." This instruction No. 2 was in accordance with the rulings of this Court upon the measure of damages upon a case such as is presented by this record, and should have been given to the jury, to aid them in coming to a proper conclusion. It is claimed that the court erred in overruling the motion to set aside the verdict as contrary to the weight of evidence, and contrary to the law and the facts, but by reason of the fact that the above instruction was improperly excluded from the jury, which would have properly presented the law as to the manner of determining the amount of damages, we are relieved from going into an analysis of the testimony.

It is further claimed as error that the court refused to set aside the verdict on account of the misconduct of the juror Jacob Kephart. Now, the fact can not be disguised that this juror, in speaking to the two witnesses, and using the expression "The pulp mill ought to be sunk," meant and intended the pulp mill that was defendant in this action, and it manifested a feeling and prejudice that a juryman ought not to entertain who is about to try a cause. The county of Jefferson is large, and we must presume that many qualified men free from prejudice could have been obtained to try this cause, and we think the courts can not be too careful in guarding the purity of verdicts and securing juries free from prejudice. In the case of *Flesher* v.

*Hale*, 22 W. Va. 44 (second point of syllabus) it was held that: "If, after the jury has been sworn, facts are established which show that improper influences were brought to bear upon it, or that its members, or any of them, were guilty of improper conduct, such as might have resulted prejudicially to the losing party, a presumption arises against the purity of the verdict, and, unless there is testimony which shows the verdict was not affected by such influences or conduct, it will be set aside; and the burden of producing such testimony is upon the party claiming the right to keep the verdict." Now, it is true that Jacob M. Kephart, the juryman who was accused by the affidavit of two witnesses of using the above expression in regard to the defendant in this case, states in his affidavit that he was not acquainted with the plaintiffs or defendant, and was not aware of any prejudice or bias in said suit which would prevent him from giving an impartial verdict in said case, and that in rendering the verdict he acted according to the law and the evidence; that he knew Shrewbridge and Dittenger, who made affidavits to what was said by him, but had no conversation with either of them on the subject of the suit during the progress of the trial, or at any other time. This juryman seems to have been selected as foreman, and to have signed the verdict, and two witnesses swear that he used the expression that "the pulp mill ought to be sunk;" and it is fair to presume that, if this indication of feeling and prejudice towards the defendant had been brought to the attention of the learned judge who presided at the trial of this case, said juryman would never have been allowed to return a verdict in this case.

The judgment complained of must be reversed, the verdict set aside, and a new trial awarded, with costs to the appellant.

BRANNON, JUDGE, *dissenting:*

I dissent from the opinion by JUDGE ENGLISH reversing the judgment because of the refusal to abate the attachment. I am clearly of the opinion that the Court ought to have abated the action as to the dead co-plaintiff, and have

ordered the case to proceed in the name of the survivors, as two suits could not be made out of one, especially as the whole cause of action remained with the survivors, leaving nothing in the administrator of the dead man, on which to prosecute the suit. Code, c. 127, s. 2, does save the action from death under the common-law, but only in favor of the survivors. But the court has not yet tried that branch of the suit standing in the name of the administrator. If that be tried, and judgment given for plaintiffs, a writ of error would remedy the error of persisting in that branch of the suit. That bridge can not be crossed until it shall be reached. The court tried the action as to the surviving plaintiffs just as it ought to have done if a proper order of abatement had been entered. Then how can you reverse a judgment for that cause in that branch of the suit, so to call it, but really the suit proper? The defendant is not injured in this present trial by the refusal to abate as to the dead man. If even there had been recovery of the whole—not merely three-fourths—of the damages, that would have been no ground of complaint. The only error in this case is the limiting to the recovering of three-fourths, but that is an error in favor of the defendant. I agree to reverse for the refusal of instruction No. 2. I see no error in refusing No. 1. The action was for permanent injury. *Watts* v. *Railroad Co.* 39 W. Va. 196 (19 S. E. 521).