338 S.E.2d 410

**The GEARY LAND CO.**

v.

**Adam M. CONLEY, et al.**

**No. 16437.**

Supreme Court of Appeals of West Virginia.

Dec. 19, 1985.

Leo Catsonis, Charleston, for appellants.

James F. Brown, III, Charleston, for appellee.

PER CURIAM:

The Geary Land Company (hereinafter Geary) filed this civil action in the Circuit Court of Kanawha County to fix a boundary line between a parcel of land it owned in Kanawha County and adjacent tracts of land owned by various parties defendant below, including Adam M. and Barbara E. Conley, the appellants herein. The jury returned a verdict finding the boundary lines to be as contended by Geary and the trial court entered judgment, including an award of court costs, against the Conleys.[1] The trial court, however, denied Geary's request to assess its surveying expenses as a part of its costs against the Conleys.

The Conleys contend on appeal that the trial court committed error in one of its evidentiary rulings admitting certain written documents offered by Geary. Geary, by cross-assignment of error, argues that the trial court erred in denying it an award for its surveying expenses as a part of its costs of the litigation. For the reasons that follow, we affirm.

Geary's land was originally a part of the Carter-Beverly tract of land which contained over 5,000 acres. The out-conveyance to Geary's predecessor in title con-

---

1. The defendants, Carl S. and Wilma R. Metheny, agreed with the boundary lines shown by the Geary survey.

veyed all the Carter-Beverly tract, minus all previous out-conveyances, including the Jacob Young and Henry Hill tracts. Geary's tract containing some 213 acres adjoins the Conleys' property on the southeast side. The Conleys purchased their land, known as the Jacob Young tract, which contains some 200 acres in 1972. The Conleys sold a lot of about two acres out of their tract to the Reeds in 1978. The Methenys also owned properties in the area, including a 56 acre tract adjoining the eastern side of the Conleys' property and the northern boundary of the Geary tract.

Geary and the Conleys could not agree as to their common boundaries. Their experts experienced substantial problems in arriving at an accurate determination of the corners and common boundary lines of the respective properties. None of the various deeds in the area when plotted would close. The descriptions in the Conley and Geary deeds related back to the original out-conveyances that were well over one hundred years old and none of the natural monuments called for, all being trees, could be located on the ground.

There were also mistakes in various calls in the Conley deed description. Geary, the Conleys, and the Methenys had their properties surveyed, and Geary also had a survey conducted of the Conley tract. Numerous discrepancies were present among the various surveys. During the trial of the case, eighteen witnesses testified, including three surveyors, and some nine maps, fourteen deeds, fourteen overlays, and several other documents supporting the claims of the respective parties were introduced in evidence.

The evidentiary ruling that the Conleys assign as error on appeal occurred during Geary's case in chief. James F. Brown, III, an attorney and the acting president of Geary, testified that he was in possession of many old records relating to the location of the various tracts, including what was described as a letter of intent or receipt dated in the 1850's that was purportedly written by one of Conleys' predecessors in title, and a map which closely followed the general description provided for in that letter. He stated that the documents were business records obtained from a law office of a predecessor in title and had always been kept in law offices. The documents were currently being stored in fireproof containers.

When the letter of intent and map were offered in evidence, along with several other exhibits, the Conleys objected on the ground that the documents had not been properly authenticated. The trial court judge overruled the objection and admitted the documents based on Mr. Brown's testimony that they were a part of files regularly kept by Geary. An exception to that ruling was taken.

The Conleys contend that these two documents were improperly admitted in evidence as they did not meet the business record exception to the hearsay rule. *See Hill v. Joseph T. Ryerson & Son, Inc.,* 165 W.Va. 22, 268 S.E.2d 296 (1980); *Tedesco v. Weirton General Hospital,* 160 W.Va. 466, 235 S.E.2d 463 (1977). Geary argues that the Conleys did not make a specific objection to the introduction of the two writings.

We have carefully considered these arguments and confess to having some doubt as to whether the documents were properly admitted into evidence, particularly with regard to whether the regularity requirement of the business record exception was satisfied.[2] We do not, however, believe it necessary to resolve these evidentiary issues in the present case because we conclude from a careful review of the entire record in the case that, even if an error were committed, it was entirely harmless.[3]

---

2. In *Hill v. Joseph T. Ryerson & Son, Inc.,* 165 W.Va. at 41–42, 268 S.E.2d at 308, we said: "The basis of the shopbook exception is that notations or entries made routinely in the regular course of business at the time of the transaction or occurrence, or within a reasonable time thereafter, are trustworthy and reliable."

3. In view of our disposition of these issues, it is unnecessary for us to rule on Geary's motion to correct an alleged error in the trial transcript. For the same reason, we do not address the arguments of Geary that the documents could have been admitted on other grounds than the business record or shopbook rule, i.e., ancient documents, declaration of disinterested de-

After the documents were introduced in evidence, they were not referred to again except for one instance by Geary's surveyor. It is clear from the testimony of Geary's surveyor that he did not rely solely, or even principally, on the letter of intent in determining the corners and boundary lines of the Conleys' property. He testified that he ascertained what was the most critical boundary line by reliance on a deed to an adjoining property, the deed to the Henry Hill tract, that was senior to the Conleys'. He also stated that by using this line, the error of closure as to the Conleys' property was minimized.

Additionally, his opinion was influenced by information he obtained from adjoining property owners as to where the disputed boundary line was located. Furthermore, the location of the boundary line determined by Geary's surveyor was of only secondary importance to the primary issue. The primary issue concerned where the Conleys' southernmost corner was located along that contested boundary line, a matter not referred to in the letter of intent.

The Conleys' evidence of a different boundary line and the location of their southernmost corner was not persuasive, as their surveyors offered two different theories concerning the true boundaries, and Mr. Conley testified that he disagreed with his own surveyors. It is also clear that the evidence of record, even without the two challenged documents, clearly supports the jury's verdict. In short, the evidence complained of was not significant when viewed from the perspective of the evidence as a whole.

■ It is, of course, fundamental that "[t]he conduct of a civil trial does not have to be perfect in order to be affirmed on appeal. Rule 61, W.Va.R.C.P." Syllabus Point 18, *Ilosky v. Michelin Tire Corp.*, 172 W.Va. 435, 307 S.E.2d 603 (1983). Rule 61, which must guide our deliberations here, provides, in part: "No error in either the admission or the exclusion of evidence

... is ground for granting a new trial or setting aside a verdict ... unless refusal to take such action appears to the court [to be] inconsistent with substantial justice." This harmless error rule as to evidentiary rulings is part of a broader principle, as indicated in Syllabus Point 2 of *Boggs v. Settle*, 150 W.Va. 330, 145 S.E.2d 446 (1965):

"On appeal of a case involving an action covered by the Rules of Civil Procedure, this Court will disregard and regard as harmless any error, defect or irregularity in the proceedings in the trial court which does not affect the substantial rights of the parties."

■ Since we find that any error in the admission of the evidence complained of did not affect the substantial rights of the Conleys, we must affirm the jury's verdict.

The only remaining issue for decision is whether the trial court judge erred in not awarding Geary the expenses it incurred in surveying the Conleys' property. In its amended petition, Geary requested the trial court judge to appoint a surveyor for the purpose of conducting a survey of the Conley tract. The trial court did not by order either grant or deny this request. The trial court judge thereafter granted Geary's motion for permission to survey the Conley property and authorized entry on the property for that purpose. The jury ultimately adopted the results of this survey as the true common boundary lines between Geary and the Conleys.

After the verdict, the trial court denied Geary's request that its surveying expenses be taxed as costs against the Conleys, and likewise denied a subsequent motion to amend the judgment to award Geary its surveying expenses. In rejecting Geary's request, the trial court judge in a letter opinion concluded that such costs could not be awarded, unless the party seeking the award had obtained prior authorization from the court to conduct the survey.[4] Since the trial court judge had

ceased person as to a private boundary, and res gestae.

4. Courts in a few jurisdictions have held in actions involving real property that the expense of a survey that was prepared for use at trial pursuant to a court order is taxable as a cost

not appointed the surveyor, he refused to assess such costs against the Conleys.

■ In the past we have acknowledged this general rule in *Humphrey v. Mauzy*, 155 W.Va. 89, 95, 181 S.E.2d 329, 332 (1971): "Costs were unknown at common law. They are created and provided for by statute and may be imposed, recovered or collected only as authorized by statute." *See also Humphrey Mfg. Co. v. City of Elkins*, 93 W.Va. 16, 115 S.E. 846 (1923). In a number of cases, this Court has held that prohibition will lie to prevent enforcement of a judgment for costs not authorized by statute. *E.g.*, Syllabus Point 2, *Warman v. Herndon*, 81 W.Va. 574, 94 S.E. 977 (1918); Syllabus Point 2, *West Virginia Central Gas Co. v. Holt*, 66 W.Va. 516, 66 S.E. 717 (1909); Syllabus Point 3, *Bice v. Boothsville Telephone Co.*, 62 W.Va. 521, 59 S.E. 501 (1907). Consequently, at least as a general rule, awards of costs are not recoverable in the absence of a provision for their allowance in a statute or court rule. *Nelson v. West Virginia Public Employees Ins. Bd.*, 171 W.Va. 445, 300 S.E.2d 86, 91 (1982); 20 Am.Jur.2d *Costs* § 5 (1965). We must, therefore, look to our statutes and the rules of civil procedure to determine whether Geary's surveying expenses can be awarded as costs.

■ W.Va. Code, 59–2–8, provides, as pertinent here, that "[e]xcept where it is otherwise provided, the party for whom final judgment is given in any action … shall recover his costs against the opposite party…." Rule 54(d) of the West Virginia Rules of Civil Procedure provides, as relevant here, that:

"Except when express provision therefor is made either in a statute of this State or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs…. The clerk shall tax the costs within 10 days after judgment is entered, and shall send a copy of the bill of costs to each party affected thereby."

It should be noted that neither Rule 54(d) nor W.Va.Code, 59–2–8, defines what are costs, but in this regard we are aided by W.Va.Code, 59–2–13, which directs the "clerk of a court wherein a party recovers costs shall tax the same." This is followed by W.Va. Code, 59–2–14, which authorizes a statutory fee.[5] There are also contained in W.Va. Code, 59–2–15, additional costs that may be taxed.[6] Finally, we note that W.Va. Code, 59–2–16, provides the right of a court to restrict the taxation of the cost for witnesses.[7] A more complete elaboration of specialized cost statutes and civil rule provisions is contained in M. Lugar &

---

against the losing party, despite the absence of a statute expressly authorizing such an award as costs. *See* 20 Am.Jur.2d *Costs* § 62 (1965); 20 C.J.S. *Costs* § 219 (1940); Annot., 97 A.L.R.2d § 20 (1964). We need not pass on that issue here since the lower court did not order a survey.

5. W.Va. Code, 59–2–14, provides:
   "He shall include in the costs to the prevailing party:
   "(a) In any civil action, ten dollars;
   "(b) To the party prevailing in the supreme court of appeals, thirty dollars;
   "(c) In civil actions in any court of limited jurisdiction, the same fees as are allowed in a circuit court for like actions."

6. W.Va. Code, 59–2–15, provides:
   "The clerk shall tax in the costs all fees of officers, or other persons properly acting in lieu of officers, which the said party appears to be chargeable with, in the case wherein the recovery is, except that where, in any court on the same side, more than one copy of anything is obtained or taken out, in which may

be included a copy of any pleading in a pending case, there shall be taxed only the fee for one copy of the same thing. He shall also tax fifty cents for each legal notice from such party therein, served in this State, and not otherwise taxed; the costs of executing any order of publication made in the case for such party and of any advertisement from him in the case, made in pursuance of law; and the allowances to his witnesses, and every further sum which the court may deem reasonable and direct to be taxed for depositions, taken in or out of the State, or for any other matter."

7. The relevant portion of W.Va. Code, 59–2–16, is:
   "The court may restrict the taxation in the costs for witnesses to so many as may be deemed just. No entry for a witness shall be made against a party recovering costs after execution has issued for such party; and in no case shall there be an entry of a witness for attendance at a term of court after the adjournment of such term."

L. Silverstein, West Virginia Rules 408–14 (1960).[8]

We do not find nor are we cited any other statute or civil rule provision specifically authorizing recovery of a party's surveyor's expenses as a part of the costs of the litigation or otherwise. We are aware that there is some divergence of view on this matter in other jurisdictions with some courts taking the position that in an appropriate case a court may have discretion under its inherent power to order the payment of a surveyor's expenses. *See* Annot., 97 A.L.R.2d 138, 169 (1964).

For the purposes of this case, all we need decide is that the circuit court did not err in refusing to order that the Conleys pay the cost of Geary's surveying expenses.

For the foregoing reasons, the judgment of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.

---

**8.** In identifying certain of our cost statutes, we have not attempted to be exhaustive. The cita-

tion to M. Lugar & L. Silverstein, *supra,* gives a fuller discussion.