425 S.E.2d 128

**Eugene KINCAID and Lena Kincaid, Plaintiffs Below, Appellees,**

v.

**Charles MORGAN and Paul Morgan, Defendants Below, Appellants,**

v.

**Johnny WALKER and Barbara Walker, Third–Party Defendants Below, Appellees.**

**No. 20735.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1992.

Decided Dec. 11, 1992.

Joseph A. Colosi, Welch, for appellants.

Richard G. Rundle, Pineville, for appellees.

David G. Thompson, Pineville, for third-party defendants/appellees.

PER CURIAM:

This case is an appeal from the final judgment of the Circuit Court of Wyoming County, entered May 6, 1991. The trial court ruled that the appellants, Charles Morgan and Paul Morgan, had encroached upon and caused damage to land owned by the appellees, Eugene and Lena Kincaid. Damages were awarded to both the Kincaids and the third-party appellees, Johnny Walker and Barbara Walker. The case was heard by the trial court without a jury, and the appellants assign several errors to the court's judgment. For the reasons that follow, the judgment of the trial court is affirmed in part, reversed in part, and remanded with directions.

## I

The Kincaids and Morgans own adjoining parcels of real estate in Wyoming County. The Walkers sold the Morgans their parcel prior to the instigation of litigation in this case. The Morgans built a restaurant on their parcel in 1985. A survey of the boundary between the adjoining parcels performed for the Kincaids showed that the Morgans' restaurant encroached on the land of the Kincaids a total of 99.585 square feet.

In a complaint filed July 15, 1987, the Kincaids complained of the Morgans' encroachment and damage to their property attendant to the encroachment. The Kincaids sought an order requiring the Morgans to remove the restaurant from their property, damages and rent. The Morgans' answer denied the charges in the Kincaids' complaint and counterclaimed that they had acquired the encroached upon property through the adverse possession of the Walkers. The Morgans also filed a complaint against the Walkers alleging that the Walkers had represented that the boundary between the Morgans and Kincaids extended the distance of the encroachment. The Walkers denied the Morgans' allegations and sought a dismissal of the complaint against them and attorney fees and costs.

Trial in this case commenced on April 2, 1990. The Kincaids introduced the testimony of surveyors who testified that the Morgans' restaurant encroached upon their land to the extent of 99.585 square feet. The surveyors testified that, despite inconsistencies in their report, it was nonetheless accurate.[1] The appellee, Lena Kincaid, testified as to the water damage sustained on her property as a result of the Morgans' encroachment. The trial court also viewed the site of the boundary dispute. Nothing in the record before this Court disputes the Kincaids' assertions of property damage.

Appellant, Charles Morgan, testified that Johnny Walker represented to him that the boundary between his property and the Kincaids was defined by a certain steel peg.[2] The surveyors placed this peg several feet over from the boundary and on the Kincaids' property. Furthermore, the appellant Charles Morgan admitted that the restaurant encroached upon the Kincaids' property even if the steel peg accurately defines the boundary.

Charles Morgan also asserted that he built the restaurant on the footer of a "pumphouse" previously constructed by the Walkers. This assertion was made in an attempt to support the appellants' claim of adverse possession. Johnny Walker acknowledged building the pumphouse, but claimed that the restaurant wall was not built on the pumphouse footer, which he asserted was built entirely on his property. He contended the restaurant was built several feet over from the pumphouse footer, encroaching on the Kincaids' property.

In its final order, the trial court found, among other things, that the Morgans' claim of adverse possession had not been established by the evidence; that the Morgans had not established the affirmative defense of estoppel; that the Morgans had not established any right to recover on their counterclaim because, "even by their own evidence, they encroached on the real estate ... belonging to [the Kincaids]"; and that the Morgans' encroachment upon the Kincaids' land had caused water shed damage, a damaged tie wall, wash-out of a ditch, and annoyance and inconvenience to the appellees. Therefore, the trial court came to the following conclusions of law:

1. The [Morgans] knew of or should have known they were encroaching on [Kincaids'] real estate and damages are

---

1. Appellants contend that the survey was inaccurate because the surveyors did not produce "closure" calculations at trial. Closure is a term used to describe calculations relating to the accurateness of the survey. The surveyors testified that they did make closure calculations and that their survey was accurate. Nothing in the record before this Court contradicts that testimony.

2. Johnny Walker acknowledged that he told Charles Morgan that he and Mrs. Kincaid had placed the steel peg to mark the boundary, but that he also informed Morgan that the peg placement may have been inaccurate. Mrs. Kincaid denied any knowledge of how the peg came to be there.

assessed against [Morgans] in the amount of $4,962.25.

2. [The Morgans] impleaded Johnny Walker, et ux., to establish an implied warranty under a quitclaim deed and that theory of recovery has never been recognized under the law of the State of West Virginia. If Defendants would have relied on the boundary line pointed out by Johnny Walker, this lawsuit would never have taken place. Therefore, Johnny Walker is awarded a judgment for attorney fees against Defendants int he amount of $507.50.

The Morgans contend that the trial court erred by (1) awarding damages to the Kincaids for the entire purchase price of their property but not conveying title to the encroachment to the appellants; (2) finding that the evidence did not support the Morgans' defense of estoppel; (3) finding that the evidence did not support the Morgans' contention that they had acquired the encroached upon land through adverse possession accomplished by the Walkers; (4) awarding attorney fees and survey costs to the Kincaids and Walkers; and (5) finding that the Kincaids' survey was accurate.

## II

■ Several of the assigned errors relate to the trial court's findings of fact. Review of the findings of fact of a final court sitting without a jury is governed by the standard enunciated in syllabus point 1 of *McDaniel v. Romano*, 155 W.Va. 875, 190 S.E.2d 8 (1972): "Findings of fact by a trial court without a jury will not be set aside unless they are clearly wrong." [3]

■ The Morgans argue that the survey report was inaccurate and should not have been found to be accurate. Although there was evidence that one of the surveyors' notes slightly conflicted with the survey report, the licensed land surveyor who oversaw the survey and has over thirty years of surveying experience, testified that both the survey notes and the survey report were accurate. He explained that the survey report included the overhang of the roof of the restaurant while the survey notes did not. The trial court was not clearly wrong in relying on this testimony and was therefore not in error.

■ The Morgans also assert that the trial court erred in finding that the evidence did not support their claims of estoppel and adverse possession. Regarding the estoppel contention, the Morgans contend that the appellee, Mrs. Kincaid, helped third-party appellee, Mr. Walker, set the pipe he relied upon as the boundary when building the restaurant. Indeed, Mr. Walker testified that Mrs. Kincaid aided him in determining where to set the pipe marking the boundary. Mrs. Kincaid, however, testified that she had no knowledge of who set the pipe. Mr. Walker testified that he told Mr. Morgan that the pipe may or may not be an accurate indication of the boundary. Based upon either the testimony of Mrs. Kincaid or Mr. Walker, the trial court was not clearly wrong and did not err in finding insufficient evidence of estoppel.

■ Similarly, the Morgans' claim of adverse possession was not established by the evidence. Mr. Morgan testified that the restaurant was build upon the "footer" of a previous building construed by Mr. Walker. The Morgans assert that the Walker building constituted the requirements of adverse possession which was transferred to them. Mr. Walker, however, testified that the restaurant building was not constructed on the "footer" of his building, which he claimed was built within the actual property boundary. Walker testified that the restaurant was approximately two feet farther toward the Kincaids' property than the footer of his building. Again, the trial court was not clearly wrong in finding insufficient evidence of adverse possession.

## III

The appellants assert that the trial court erred in failing to award the appellants title

---

**3.** This standard is based upon Rule 52 of the *W.Va.R.Civ.P.*, which states, in part: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

to the encroached upon property. We are guided in this case by *Somerville v. Jacobs*, 153 W.Va. 613, 170 S.E.2d 805 (1969). In *Somerville* we embarked upon a comprehensive examination of the jurisdiction of a court to grant relief in a situation similar to this. We stated that:

> [I]t is manifest that equity has jurisdiction to, and will, grant relief to one who, through a reasonable mistake of fact and in good faith, places permanent improvements upon land of another, with reason to believe that the land so improved is that of the one who makes the improvements[.]

153 W.Va. at 626, 170 S.E.2d at 812.

■ In *Somerville* the trespassing builder constructed a warehouse on a parcel of land adjacent to the lot actually owned by the builder. It was undisputed that the builder had entirely relied upon a faulty surveyor's report in building the warehouse on the wrong lot, and that he did not discover this mistake until after the building had been completed. It was also undisputed that the true owners of the trespassed-upon-property were in no way guilty of fraud or inequitable conduct that would constitute an estoppel. Therefore, the Court held in the syllabus:

> An improver of land owned by another, who through a reasonable mistake of fact and in good faith erects a building entirely upon the land of the owner, with reasonable belief that such land was owned by the improver, is entitled to recover the value of the improvements from the landowner and to a lien upon such property which may be sold to enforce the payment of such lien, or, in the alternative, to purchase the land so improved upon payment to the landowner of the value of the land less the improvements and such landowner, even though free from any inequitable conduct in connection with the construction of the building upon his land, who, however, retains but refuses to pay for the improvements, must, within a reasonable time, either pay the improver the amount by which the value of his land has been improved or convey such land to the improver upon the payment by the improver of the landowner of the value of the land without the improvements.

The instant case differs from *Somerville* in important respects. In *Somerville* it was undisputed that the builder had acted in good faith, and under the reasonable belief that he owned the property in question. Here, the Morgans have admitted that, even if the boundary between the properties is where they believed it to be, their building still trespasses on the Kincaids' property. As the trial court stated in its final order: "[The Morgans] have encroached upon the 0.91 acre tract of land belonging to [the Kincaids]. This encroachment is obvious from the expert testimony of the land surveyor. It is obvious to the eye even if you accept the boundary line testified to by the [Morgans]."

■ It is clear from the record that the Morgans had no "reasonable belief" that they owned the land they encroached upon. In fact, they acknowledge that their building was constructed so as to encroach upon the Kincaids' property, even if the placement of the boundary is where they contend.[4] The trial court did not err in leaving title to the encroached upon property in the Kincaids.

■ However, the damages awarded to the Kincaids by the trial court in regard to the encroachment encompassed the amount paid by the Kincaids for the purchase of

---

4. In 41 Am.Jur.2d *Improvements* § 15 (1968) the "good faith" qualification in situations such as this was examined:

> Since it would be manifestly inequitable to the owner to make allowances for improvements to one who made the expenditures with a full knowledge of superior rights, only such claimants as made improvements in good faith in the belief that they had a good title are entitled to an allowance against the true owner for improvements made by them. The civil law rule, which permitted one who held possession, even in bad faith, to recover the value of his improvements, if the real owner chose to take them, has never obtained in the common law or in equity.

(citations omitted).

the entire 0.91 acre parcel in 1972.[5] We cannot discern any relevance the 1972 purchase price for a 0.91 acre parcel of land has on an assessment of damages for a 1985 encroachment amounting to only 99.575 square feet (an amount equal to one quarter of one percent of the total 0.91 acres). It has been a longstanding rule in this jurisdiction that in an action for trespass, actual damages should be calculated by taking the value of the property before the trespass and subtracting the value of the property after the trespass. As we stated in syllabus point 2 of *Rowe v. Shenandoah Pulp Co.*, 42 W.Va. 551, 26 S.E. 320 (1896):

> In ... a [trespass] suit it is proper for the court to instruct the jury that they will find, in assessing damages, if they believe from the evidence any were inflicted upon the property in question by the defendant, only such difference in the value of the said property at the time said damages were inflicted and the value of the said property before the said damage was so done.

■ Although the instant case was tried not by a jury, but by the trial court, the principle enunciated in *Rowe* remains valid. We believe assessment of damages in this case should be made by calculating the actual loss in value to the 0.91 acre parcel caused by the encroachment. Therefore, this issue must be remanded for determination of the actual loss in value to the Kincaids' property caused by the encroachment, and an appropriate reassessment of damages in that regard.

### IV

■ Appellants assert that the trial court committed reversible error in awarding attorney fees to both the appellees and the third-party appellees. We have discussed the "general rule" regarding the recovery of attorney fees in *Nelson v. West Virginia Public Employees Insurance Board*, 171 W.Va. 445, 450, 300 S.E.2d 86, 91 (1982):

> As a general rule awards of costs and attorney fees are not recoverable in the absence of a provision for their allowance in a statute or court rule. *See, e.g., Burdette v. Campbell*, 126 W.Va. 591, 30 S.E.2d 713 (1944); *see generally*, 1 S. Speiser, *Attorneys' Fees* § 12:3 (1973) and cases cited therein.

Appellees argue that Rule 54(d) of the *W.Va.R.Civ.P.* allows an award of attorney fees in this case. Rule 54(d) states, in part: "Except when express provision therefor is made either in a statute of this State or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." In *Nelson,*[6] *supra*, we recognized our longstanding holding that "costs" do not include attorney fees. We stated: "This Court has previously held that attorney fees are not 'costs,' *State ex rel. Citizens Nat'l Bank v. Graham*, 68 W.Va. 1, 69 S.E. 301 (1910), and thus attorney fees would not ordinarily be recoverable as such." 171 W.Va. at 451, 300 S.E.2d at 92. *See also* 75 Am.Jur.2d *Trespass* § 147 (1992).

Appellees argue that "[t]here is no proof that attorney fees were awarded to [them], since the [trial] court's award to [them] was in the form of a total assessment." The trial court, however, listed $500.00 in attorney fees as part of its findings of fact. As noted above, the Kincaids argue that attorney fees are payable by virtue of *W.Va.R.Civ.P.* 54(d), but clearly such an argument is incorrect. *Nelson, supra.* The trial court gave no other justification for its award of attorney fees, and we cannot discern such rationale from the record. Therefore, the damages awarded to the Kincaids must be reduced by the amount of attorney fees awarded.

■ The trial court also awarded attorney fees to the Walkers. The Walkers argue both that such an award was justi-

---

5. The Kincaids paid $2730.00 for the 0.91 acre parcel of land in 1972.

6. In *Nelson,* the plaintiff sought attorney fees in a case where a public officer had failed to perform a mandatory duty. In syllabus point 4 we stated: "In mandamus proceedings where a public officer willfully fails to obey the law, attorney fees will be awarded."

fied under both Rules 11 and 54(d) of the *W.Va.R.Civ.P.* Rule 54(d) is inapplicable for the reasons stated above; Rule 11 states, in pertinent part:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

In *Daily Gazette Co., Inc. v. Canady*, 175 W.Va. 249, 332 S.E.2d 262 (1985), we reflected upon the purpose of the pertinent parts of Rule 11, stating: "This rule reflects the dual concern with discouraging both frivolity and abuse found in the Code of Professional Responsibility, and places certain burdens upon the attorney with respect to his or her gatekeeping function." 175 W.Va. at 252, 332 S.E.2d at 265. In the syllabus of *Daily Gazette Co., Inc.*, we held that a court may order attorney fees *paid by an attorney* who acts in a "vexatious, wanton or oppressive," manner pursuing a claim in bad faith:

A court may order payment by an attorney to a prevailing party reasonable attorney fees and costs incurred as the result of his or her vexatious, wanton, or oppressive assertion of a claim or defense that cannot be supported by a good faith argument for the application, extension, modification, or reversal of existing law.

In this case the trial court did not order an attorney to pay attorney fees, but did so order the Morgans. The court did not, however, make any finding that either the Morgans or their counsel acted in a "vexatious, wanton, or oppressive" manner in pursuit of their claim. The trial court did, however, find that the appellants had presented a theory never before recognized in this State, and, had they relied upon the boundary line asserted by the Walkers, the Walkers would not have been involved in the instant case. For that reason, the trial court granted attorney fees to the Walkers.

We find the evidence in this regard unclear as to whether the suit against the Walkers met the "vexatious, wanton or oppressive" standard. On the state of the record, we cannot in justice determine the judgment that should be rendered as to this issue. In such situations, we are guided by syllabus point 3 of *Heydinger v. Adkins*, 178 W.Va. 463, 360 S.E.2d 240 (1987), where we stated:

'When the record in an action or suit is such that an appellate court can not in justice determine the judgment that should be finally rendered, the case should be remanded to the trial court for further development.' Syl. pt. 2, *South Side Lumber Co. v. Stone Construction Co.*, 151 W.Va. 439, 152 S.E.2d 721 (1967).

Because the record has not been adequately developed in this regard, we must remand this issue to the trial court for further development to determine whether the Morgans have acted in a "vexatious, wanton, or oppressive" manner. We note for the record that we have firmly rejected the argument that the frivolity of an action, standing alone, will support a finding of bad faith. *Daily Gazette Co., Inc., supra.* In that case, we also stated, "as the frivolousness of a claim or defense increases, the likelihood that it is being advanced for improper purposes increases. In some cases, however, frivolity may be less a function of improper motive than of sheer incompetence." 175 W.Va. at 253, 332 S.E.2d at 266.

## V

Appellants lastly assert that the trial court committed reversible error in awarding the appellees the cost of their survey. For this proposition the appellants cite *Geary Land Co. v. Conley*, 175 W.Va. 809, 338 S.E.2d 410 (1985) wherein we rejected the prevailing parties' claim of survey costs. In *Geary Land Co.*, we stated:

> We do not find nor are we cited any other statute or civil rule provision specifically authorizing recovery of a party's surveyor's expenses as a part of the costs of the litigation or otherwise. We are aware that there is some divergence of view on this matter in other jurisdictions with some courts taking the position that in an appropriate case a court may have discretion under its inherent power to order the payment of a surveyor's expenses. *See* Annot., 97 A.L.R.2d 138, 169 (1964).

175 W.Va. at 814, 338 S.E.2d at 415. Similarly, in this case, we are unable to find nor are we cited any statute or civil rule provision specifically authorizing recovery of a party's surveyor's expenses. Therefore, the amount awarded the appellees from the appellants must be further reduced by the amount of the survey costs.

## VI

Based upon the foregoing, the May 6, 1991 order of the Circuit Court of Wyoming County is affirmed, in part, and reversed, insofar as attorney fees and survey costs were awarded to the Kincaids, and insofar as the 1972 purchase price paid by the Kincaids was awarded as damages for the encroachment by the Morgans, and also remanded for determination of the amount of damages suffered by the Kincaids due to the encroachment, and for a determination of the appropriateness of an award of attorney fees to the Walkers.

Affirmed, in part; reversed, in part; remanded with directions.